## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| NATIONAL ORGANIZATION FOR WOMEN-NEW YORK CITY,<br><br>     *Plaintiff*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF DEFENSE, and UNITED STATES DEPARTMENT OF VETERANS AFFAIRS,<br><br>     *Defendants*. | Civ. No.<br><br><br><br><br><br>August 2, 2023 |

### COMPLAINT

1.     After devotedly serving their country, many veterans and service members are eager to build their families. Family support is critical to military readiness and to the success of service members and veterans. As President Biden recently declared, "[T]he commitment and resilience of military-connected families are essential to the recruitment, retention, and readiness of our Armed Forces and the enduring strength of our Nation. Meeting the economic, social, and emotional needs of our military and veteran families, military caregivers, and survivors is a national security imperative." Exec. Order 14100 (June 9, 2023).

2.     Tragically, infertility is pervasive within the military community, leaving thousands of veterans and service members struggling to build their families. Initial research indicates veterans and service members face higher rates of infertility than the general population. For many, fertility-related obstacles to family building are a direct result of their service.

3.     Some veterans and service members suffer combat-related injuries that impair their ability to have children. Others are exposed to toxic chemicals or environmental hazards that

damage their fertility. Still others suffer sexual assault while serving or develop post-traumatic stress disorder (PTSD), both of which are proven infertility risk factors. Moreover, the routine demands of military life, such as deployments and regular permanent changes of station, force many service members to postpone marriage and childrearing.

4.      TRICARE, the military health care program operated by Defendant U.S. Department of Defense, and the Veterans Health Administration (VHA), a part of Defendant U.S. Department of Veterans Affairs, respectively provide fertility care for many service members and veterans. For eligible service members and veterans, this care can include in vitro fertilization (IVF), the most effective known fertility treatment.

5.      Yet Defendants severely limit IVF availability, unlawfully excluding entire segments of the military and veteran community on discriminatory and arbitrary grounds.

6.      Veterans and service members seeking coverage of IVF treatments must, together with a spouse, be able to provide their own sperm and eggs and are prohibited from using gametes from third parties ("Member Gamete Requirements"). Defendants' policy also limits the benefit to service members and veterans who are lawfully married ("Marriage Requirements").

7.      Additionally, no matter how much an active-duty service member struggles with fertility, only active-duty service members with a "serious or severe" illness or injury from service can access IVF. Similarly, only veterans with infertility diagnosed as "service-connected" can receive IVF from VHA ("Service-Connection Requirements").

8.      The IVF policies facially exclude service members who are a) single or in an unmarried couple; b) unable to use their own eggs or sperm because of illness or injury; c) in a same-sex couple or couple with the same reproductive organs; or d) lacking a service-connected disability or Category II or III illness causing infertility.

9.      By excluding service members and veterans from IVF coverage on the basis of sex, sexual orientation, marital status, and/or the cause of their infertility, Defendants' discriminatory policies violate Section 1557 of the Affordable Care Act, the due process and equal protection guarantees of the Fifth Amendment of the Constitution, and the Administrative Procedure Act.

10.     Plaintiff National Organization for Women - New York City (NOW-NYC) and its military and veteran members seeking IVF services who are in same-sex or unmarried couples, are single, or whose infertility is not diagnosed or confirmed to be the result of military service, are harmed by Defendants' discriminatory IVF policies. These NOW-NYC members are categorically denied the IVF treatment they need to build their families.

11.      NOW-NYC seeks injunctive and declaratory relief on behalf of itself and its members enjoining Defendants from enforcing the discriminatory eligibility provisions of their IVF policies and declaring those provisions unlawful, so that no service member or veteran is denied the care they need to start a family solely because of who they love, their choice whether or not to marry, or the precise source of their fertility challenges. Specifically, NOW-NYC asks that this court declare unlawful and permanently enjoin Defendants from enforcing the Marriage Requirements, the Member Gamete Requirements, and the Service-Connection Requirements (collectively, the "Discriminatory Provisions").

## PARTIES

12.     Plaintiff National Organization for Women - New York City ("NOW-NYC") is a membership-based organization whose mission is to ignite change for the women and girls of New York through advancing legislation, promoting women in leadership, and challenging discrimination and violence against women. NOW-NYC is devoted to protecting the equal rights of women and LGBTQ+ people and considers the provision of reproductive healthcare to be an

essential component of its organizational mission. NOW-NYC is a membership-based organization whose members pay annual dues, participate in making organization-wide policy, vote for board members, and apply to be elected or selected to join the board themselves. NOW-NYC's members include veterans and service members denied IVF coverage because of one or more of the Discriminatory Provisions. These members have standing to sue in their own right and their individual participation in this matter is not necessary.

13.    Defendant U.S. Department of Defense (DoD) is the federal agency that includes the military service branches, including the Army, Air Force, Navy, and Marine Corps. It is the federal agency that administers the laws providing benefits and other services to active-duty service members. DoD is an agency within the meaning of 5 U.S.C. § 552(f)(1).

14.    Defendant U.S. Department of Veterans Affairs (VA) is the federal agency that administers the laws providing benefits and other services to veterans, their dependents, and their beneficiaries. VA is an agency within the meaning of 5 U.S.C. § 552(f)(1).

## JURISDICTION AND VENUE

15.    This Court has jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1346, 5 U.S.C. § 706 *et seq*. (Administrative Procedure Act), 42 U.S.C. § 18116 (Patient Protection and Affordable Care Act), and the Due Process Clause and equality guarantees of the Fifth Amendment of the U.S. Constitution. An actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a), and this Court may grant declaratory relief, injunctive relief, and other relief pursuant to 5 U.S.C. §§ 705-06.

16.    Venue lies in this district pursuant to 28 U.S.C. § 1391(e)(1)(C), as Plaintiff NOW-NYC is incorporated in the State of New York and maintains its principal place of business in this district, no real property is involved, and the Defendants are federal agencies of the United States.

## STATUTORY AND REGULATORY BACKGROUND

17.     Service members and families of the U.S. Military, the Reserve, and the National Guard can receive healthcare through TRICARE, the U.S. Military's healthcare program. Military veterans and their families are eligible to receive healthcare through the Veterans Health Administration (VHA), a component of VA.

18.     For many years, neither TRICARE nor VHA covered the cost of IVF for service members or veterans who needed the treatment to start families. In 2010, the Assistant Secretary of Defense for Health Affairs authorized IVF services for seriously ill or injured active-duty service members. On April 3, 2012, the Assistant Secretary of Defense for Health Affairs issued a memorandum ("2012 DoD Policy Memo") on the subject of "Policy for Assisted Reproductive Services for the Benefit of Seriously or Severely Ill/Injured (Category II or III) Active Duty Service Members," which provided implementation guidance on the new IVF policy. A copy of this memorandum is attached as Exhibit A.

19.     The 2012 DoD Policy Memo provides that seriously or severely ill or injured service members (defined as having a Category II and III injury under the DoD's Care Coordination Categories) ("Service-Connection Requirement") who can no longer conceive "naturally" will be provided with three completed IVF cycles. The benefit is limited to service members who are lawfully married ("Marriage Requirement"), and who, together with their spouse, are capable of producing their own set of sperm and eggs ("Two Gamete Requirement"). Third-party gamete donation is explicitly barred ("Donor Gamete Prohibition") (collectively, "Member Gamete Requirements").

20.     From 2012 until now, DoD and TRICARE have covered IVF services for active-duty service members in accordance with the 2012 DoD Policy Memo.

21.     Even after implementation of the 2012 DoD Policy Memo, VHA continued to prohibit IVF services for veterans.

22.     In 2017, for the first time, the Continuing Appropriations and Military Construction, Veterans Affairs, and Related Agencies Appropriations Act authorized VA to use appropriated medical services funds to provide IVF services to veterans and their partners in accordance with the conditions established in the 2012 DoD Policy Memo. Pub. L. No. 114-223, § 260, 130 Stat. 857, 897 (2017).

23.     VA subsequently promulgated an Interim Final Rule implementing the 2017 Appropriation Act's IVF coverage requirements. 82 Fed. Reg. 6273 (Jan. 19, 2017). The Final Rule took effect in 2019. 38 C.F.R. § 17.380 ("VA 2019 Regulations").

24.     The VA 2019 Regulations permit VA to provide IVF services to a veteran and the spouse of that veteran when clinically appropriate if the veteran has a "service-connected disability that results in the inability of the veteran to procreate without the use of fertility treatment." 38 C.F.R. § 17.380(a)(1).

25.     However, the VA 2019 Regulations also incorporate the discriminatory terms of the 2012 DoD Policy Memo, stating that IVF treatment will be provided to veterans "to the same extent such treatment is provided to a member of the Armed Forces who incurs a serious injury or illness on active duty" consistent with the limitations on the benefit established in the 2012 DoD Policy Memo. *Id.* § 17.380(a)(3).

26.     VA elaborated and clarified its new IVF policy in agency guidance. *See* VHA Directive 1332(2) (June 20, 2017; amended Aug. 12, 2019). A copy of VHA Directive 1332 is attached as Exhibit B. This guidance acknowledges that "[o]ver the past several years, the number of requests from Veterans for reproductive health services has increased dramatically." *Id.* at 1.

27.     A second VA guidance memo addresses eligibility for IVF for veterans. VHA Directive 1334 (Mar. 12, 2021). A copy of VHA Directive 1334 is attached as Exhibit C. This guidance confirms that IVF services for veterans remain subject to the terms of the 2012 DoD Policy Memo, *id.* at 2, the Marriage Requirement, Two Gamete Requirement, Donor Gamete Prohibition, and Service-Connection Requirement. *Id.* at 2-4.

28.     In stark terms, the VHA memo declares: "IVF services are only available to a cisgender opposite-sex legally married couple or other legally married couple with opposite-sex gametes/reproductive organs." *Id.* at 3; *see also id.* at 10 (stating the same in the eligibility section).

29.     Consistent with its discriminatory approach, VHA also defines "infertility" to mean "the inability to achieve a pregnancy after one year of regular unprotected sexual intercourse with their lawful spouse," subject to certain exceptions. *Id.* at 5. As a result, single or unmarried couples, and married couples with the same reproductive organs, can by law never have "infertility" for VA purposes.

30.     VA's authority to use funds to provide IVF pursuant to the terms of the 2012 DoD Policy Memo has been renewed and extended in VA appropriations bills every year since 2017, most recently in the Consolidated Appropriations Act, 2023. Pub. L. No. 117-328, § 234, 136 Stat. 4459 (2023). A copy is attached as Exhibit D ("2023 VA IVF Appropriations Statute").

31.     As a result, the 2012 DoD Policy Memo continues to serve as the basis for DoD's provision of TRICARE IVF benefits as well as VA's provision of IVF benefits to veterans.

## FACTUAL ALLEGATIONS

### I.     Infertility Among Veterans and Service Members

32.     After putting their lives on hold to serve their country, a significant percentage of veterans and service members struggle to start a family. More than two-thirds of respondents reported family-building challenges in one large-scale survey by Blue Star Families.[1]

33.     Infertility is a particularly widespread issue for veterans and service members. Although understudied, preliminary research suggests that veterans and service members experience infertility at higher rates than civilians. One 2018 survey found that 37 percent of respondents (female veterans and servicewomen) grappled with infertility.[2] This represents a rate more than four times the national average for women.[3]

34.     Infertility affects veterans and service members of all gender identities. In another study of veterans by researchers at VA, both male and female respondents reported experiencing infertility at higher rates than those reported by the general population.[4]

35.     Military service itself exposes many service members to risk factors that can cause infertility. Those deployed in combat may suffer head, spinal, or genitourinary injuries that affect their fertility. Female service members may also incur injuries with effects on fertility due to wearing ill-fitting combat gear designed for male bodies. Many service members are exposed to toxic chemicals or physical or environmental hazards that impair their ability to have children.

---

[1] Blue Star Fams., 2021 Military Family Lifestyle Survey Comprehensive Report 13 (2022), https://bluestarfam.org/wp-content/uploads/2022/03/BSF_MFLS_Results2021_ComprehensiveReport_03_14.pdf.
[2] Serv. Women's Action Network, Access to Reproductive Health Care: The Experiences of Military Women 7 (2018).
[3] *See* Morgan Snow, Tyler M. Vranich, Jamie Perin & Maria Trent, *Estimates of Infertility in the United States: 1995– 2019*, 118 Fertility & Sterility 560 (2022) (finding infertility rates in U.S. from 1995-2019 varied between 5.8-8.1%).
[4] Jodie Katon et al., *Self-Reported Infertility Among Male and Female Veterans Serving During Operation Enduring Freedom/Operation Iraqi Freedom*, 23 J. Women's Health 175, 177 (2013).

36.     Service members may also experience disruptions in preventative health care services, such as cervical cancer screenings, or delays in treatment for conditions like endometriosis, which may increase their risk of infertility.

37.     Many veterans and service members also experience sexual assault and/or harassment during service (collectively referred to as military sexual trauma), a known cause of infertility. Among veterans who use VA healthcare, approximately 23 percent of women reported sexual assault in the military, and approximately 55 percent of women reported sexual harassment in the military.[5] This prevalence is orders of magnitude larger than that in the general population.

38.     A history of sexual assault is associated with an increased likelihood of experiencing infertility among women veterans. In one study by VA researchers, women veterans who experienced attempted or completed sexual assault were nearly twice as likely to self-report infertility than those who did not report such experiences.[6]

39.     The psychological effects of service can also affect fertility. According to VA, 11 to 20 percent of Iraq and Afghanistan veterans suffer from PTSD.[7] Compounding matters, survivors of military sexual trauma are three times (for males) and nine times (for females) more likely to experience PTSD than veterans without such experiences.[8] Research shows that PTSD has a negative effect on fertility in the population at large and particularly among veterans.[9]

[5] *How Common Is PTSD?*, U.S. Dep't of Veterans Affs., https://www.veteranshealthlibrary.va.gov/MentalHealth/PTSD/About/142,UG4335_VA.
[6] Ginny L. Ryan et al., *Voluntary and Involuntary Childlessness in Female Veterans: Associations with Sexual Assault*, 102 Fertility & Sterility 539, 544 (2014); *see also* Ginny L. Ryan et al., *Sexual Assault and Lifetime Infertility Diagnosis in Male and Female U.S. Military Veterans*, 116 Fertility & Sterility E46 (2021).
[7] *Posttraumatic Stress Disorder*, Off. of Res. & Dev., U.S. Dep't of Veterans Affs., https://www.research.va.gov/topics/ptsd.cfm.
[8] Rachel Kimmerling, Kristian Gima, Mark W. Smith, Amy Street & Susan Frayne, *The Veterans Health Administration and Military Sexual Trauma*, 97 Am. J. Pub. Health 2160, 2162-63 (2007).
[9] Kristin Mattocks et al., *Infertility Care Among OEF/OIF/OND Women Veterans in the Department of Veterans Affairs*, 53 Med. Care 68 (2015); Beth E. Cohen et al., *Reproductive and Other Health Outcomes in Iraq and Afghanistan Women Veterans Using VA Health Care: Association with Mental Health Diagnoses*, 22 Women's Health Issues 461 (2012); Ginny L. Ryan et al., *Military Service and Medical Associations with Infertility in U.S. Veterans*,

40.    The demands of military service also routinely force service members to postpone family building. In a 2023 DoD survey of active-duty servicewomen, half of respondents reported that they "delayed getting pregnant or starting a family" during their service.[10]

41.    Many members of the military community face additional hurdles to family-building. Approximately 6 percent of service members identify as lesbian, gay, or bisexual.[11] Additionally, about 48 percent of active-duty service members[12] and 37 percent of veterans are unmarried.[13] These persons may be unable to conceive through opposite-sex intercourse.

## II.    Limited Fertility Services Available to Veterans and Service Members

42.    Against this backdrop of widespread military and veteran infertility, DoD (through TRICARE) and VA (through VHA) cover some fertility services and treatments for members.

43.    When deemed medically necessary, TRICARE covers diagnostic services for fertility problems, such as hormone evaluations and sperm function tests.

44.    VHA provides fertility services and treatments for VA healthcare enrollees that include hormone therapy, surgical corrections of structural pathologies, and intra-uterine insemination (IUI).

45.    While these services help some service members and veterans, DoD and VA continue to severely restrict access to the most common and most effective artificial reproductive technology, unaffordable to many: IVF.

---

114 Fertility & Sterility E25 (2020); Rachel Wamser-Nanney, *Trauma Exposure, PSTD and Indices of Fertility*, 41 J. Psychosomatic Obstetrics & Gynecology 116 (2020).
10 Sarah O. Meadows, Rebecca L. Collins, Megan S. Schuler, Robin L. Beckman & Matthew Cefalu, *The Women's Reproductive Health Survey (WRHS) of Active-Duty Service Members*, 10 RAND Health Q. 11 (2023).
11 Sarah O. Meadows et al., RAND, 2015 Department of Defense Health Related Behaviors Survey 213 (2018).
12 Nat'l Acads. Scis. Eng'g & Med., Strengthening the Military Family Readiness System for a Changing American Society 93 (2019).
13 Nat'l Ctr. for Veterans Analysis & Statistics, Profile of Veterans: 2017 (2019), https://www.va.gov/vetdata/docs/SpecialReports/Profile_of_Veterans_2017.pdf

46.     At his April 27, 2023 press conference VA Secretary McDonough acknowledged that there "are limitations on services that VA can provide to include to legally married, same-sex couples, [limitations] that we think are not in keeping with our requirement[] to care for all veterans." Secretary McDonough expressed his hope that these limitations might be reformed.

47.     As described above, only a small subset of service members and veterans with fertility challenges are eligible for IVF through TRICARE or VHA healthcare.

48.     In the active-duty context, IVF is available only to service members with Category II or III illnesses or injuries, meaning that they cannot return to duty within a specified time or will likely have to be medically separated from the military owing to their serious or severe injury or illness. Service members must also be married and, along with their spouse, able to use their own sperm and eggs to become pregnant.

49.     The limited availability of IVF for service members is out of step with the federal government's coverage of such care for other federal employees. Other federal employees can access IVF services irrespective of their sexual orientation or marital status. For example, Federal Employee Health Benefit (FEHB) plans provide coverage for all IVF services in states that require all insurers to include such coverage under state law (including New York). And, beginning in 2024, all FEHB plans will be required to cover IVF medications.

50.     In the VA context, IVF is available only for married veterans with service-connected infertility who, along with their spouse, can use their own eggs and sperm to conceive.

51.     As stated in VHA Directive 1334, these policies mean that, functionally, IVF is available only to service members or veterans with service-connected infertility who are in "a cisgender opposite-sex legally married couple" or other lawful marriage.

52.    The IVF policies facially exclude service members who are a) single or unmarried; b) unable to use their own eggs or sperm because of illness or injury; c) in a same-sex couple or couple with the same reproductive organs; or d) lacking a diagnosis of service-connected infertility for VHA services, or a Category II or III illness or injury for TRICARE services.

53.    None of the other fertility services provided by VA, such as IUI, fertility medications, or oocyte cryopreservation, include the same exclusionary coverage limitations.

54.    For example, VA covers IUI, a fertility treatment different from IVF in which sperm is placed directly into the uterus, for all veterans irrespective of marital status, service-connection, or need for donor sperm or eggs either due to injury or illness or because one is single or in a same-sex partnership.

55.    Likewise, IVF is the only fertility service for which veterans must prove that their infertility is specifically service connected to obtain coverage.

56.    The coverage process is complicated. At the outset, veteran VHA beneficiaries are supposed to be eligible for an initial fertility evaluation. But an evaluation is only available after a year of unprotected sexual intercourse with their spouse, per VA's definition of infertility.

57.    If a veteran is diagnosed with infertility, they may be sent for a fertility services consult. Before making such a referral, the provider will verify whether the veteran is married and will use sperm and eggs from themself and their spouse.

58.    A veteran who fails any one of the Discriminatory Provisions is ineligible for IVF services. These eligibility requirements do not preclude them from obtaining other fertility treatments (although their partner's fertility treatments will not be covered).

59.     If a veteran meets VA's requirements, their claim for IVF services will then be sent to an IVF interdisciplinary team of clinical and non-clinical staff, which must determine whether the veteran's service-connected disability is the cause of infertility.

60.     Many veterans lack the necessary medical documentation to prove that the underlying cause of their infertility arose or was aggravated during service, including because they were unable during service to access care for infertility-related conditions such as polycystic ovarian syndrome. The lack of documentation may later preclude them from obtaining IVF care.

61.     Only after verification that the marriage and gamete requirements are satisfied, and confirmation of service-connection from the IVF interdisciplinary team, may a veteran access IVF services.

62.     The consequence of the Discriminatory Provisions and this process is that many veterans are completely precluded from accessing IVF services because they are single, unmarried, or in a married couple with the same reproductive organs. VA will not even attempt to determine whether these veterans satisfy the service-connection requirement.

63.     Because of the Discriminatory Provisions, countless individuals who serve or served our country are unable to access the treatments they need to build a family, even when their inability to do so is the result of their military service.

III.    **Harms of Defendants' Discriminatory IVF Policies to NOW-NYC and Its Members**

64.     Among those harmed by the Discriminatory Provisions are NOW-NYC and its members.

65.     By restricting access to a fertility treatment on the basis of discriminatory and arbitrary markers including marital status, sexuality, and service-connection, the Discriminatory Provisions undermine NOW-NYC's fight for reproductive justice and non-discrimination.

66.     The Discriminatory Provisions' facial and categorial exclusion of all veterans and service members who are either unmarried, unable to use their or a partner's eggs or sperm because of illness, injury or sexual orientation, or lacking a diagnosis of service-connected infertility or a Category II or III illness or injury undermines NOW-NYC's mission no matter how they are applied to specific individuals.

67.     Members of NOW-NYC are burdened by the Discriminatory Provisions and as a result are unable to start the families they desire.

68.     For example, one NOW-NYC member, an active-duty military service member, underwent several rounds of IUI with her wife, a civilian TRICARE beneficiary. Unfortunately, the treatment was unsuccessful. Their best remaining chance to start a family is to pursue IVF. But because they are a same-sex couple, and thus must use donor sperm to conceive, their IVF services will not be covered by their military healthcare due to the 2012 DoD Policy Memo's Member Gamete Requirements. The cost of such services outside of insurance is prohibitive. As a result, this NOW-NYC member cannot have the children she dreamt of while serving her country.

69.     Another member of NOW-NYC, a Navy veteran, sought fertility care through VHA, but was denied IVF services because she is single, not married.

70.     Another member of NOW-NYC, an unmarried Marine veteran in a committed relationship with an opposite-sex partner, has pursued fertility treatment for over five years, including three unsuccessful rounds of IUI and multiple fertility medications. Because the former Marine is not married to her male partner, and because she lacks a confirmed service connection for her infertility diagnosis, she is ineligible for IVF services from VHA. This NOW-NYC member explored the possibility of obtaining non-covered care, but the cost and difficulty of accessing IVF

outside of VHA make it untenable. The NOW-NYC member recently became pregnant but remains ineligible for IVF services should she seek to become pregnant again in the future.

71.     Another NOW-NYC member, a nonbinary Navy veteran who uses they/them pronouns, began planning for a family with their wife. The member has service-connected injuries that their doctors have informed them prevents the veteran from safely carrying a child to term. Nevertheless, this member and their wife are ineligible for IVF and other fertility services from VHA because of the Member Gamete Requirements. The veteran and their wife were forced to pursue expensive private options try to start a family, which have not yet succeeded.

72.     Another member of NOW-NYC, an unmarried Navy veteran, served in her capacity as a health professional after obtaining an advanced degree. Service in the Navy meant relocation to different places around the world every two years, resulting in a delay in forming relationships toward the family she desired. Single at the time of her separation from the Navy, experiencing service-connected disabilities, and nearing the end of her fertile years, this member hoped for VA's support in building the family she had put on hold. Unfortunately, she did not receive it. This member paid out of pocket for two cycles of IVF, neither of which were covered by VHA because of the discriminatory Marriage and Service-Connection Requirements, and the Donor Gamete Prohibition. Fortunately, this NOW-NYC member became pregnant on the second round. She remains ineligible for VHA IVF services should she try to become pregnant again in the future.

73.     Other members of NOW-NYC are women veterans who are single. One such member, an Army veteran, has service-connected PTSD that VA recognizes results from military sexual trauma, an experience associated with an increased likelihood of infertility. However, because VA defines "infertility" as "the inability to achieve a pregnancy after one year of regular unprotected intercourse with their lawful spouse," these single veteran members can never

demonstrate infertility—let alone that it is due to a service-connected disability. They are ineligible for IVF services due to VA's arbitrary and discriminatory Marriage and Member Gamete Requirements. Some of them may also be ineligible due to the Service-Connection Requirement.

74. The Discriminatory Provisions have discouraged other veteran NOW-NYC members from seeking a diagnosis of service-connected infertility as an exercise in futility. They know that even with such a diagnosis they are ineligible for IVF care through VA because they are in same-sex married couples or are unmarried.

75. On July 10, 2023, NOW-NYC wrote the U.S. Department of Justice to request that DoD and VA immediately suspend enforcement of the Discriminatory Provisions and advising that NOW-NYC was prepared to file suit. A senior official acknowledged receipt of the request that same day but neither Defendants nor their counsel have made any substantive response.

76. Plaintiff and its members have exhausted their administrative remedies, to the extent exhaustion is required.

## CLAIMS

### CLAIM I

**Discrimination on the Basis of Sex in Violation of Section 1557 of the Patient Protection and Affordable Care Act (Against Both Defendants)**

77. The allegations of the preceding paragraphs are incorporated by reference as if they were fully set forth herein.

78. Section 1557 of the Affordable Care Act (ACA), codified at 42 U.S.C. § 18116(a), prohibits discrimination on the basis of sex, including discrimination on the basis of sexual orientation and gender identity, in any health "program or activity that is administered by an Executive Agency" or that receives federal financial assistance.

79.     VHA and TRICARE are federally funded health programs administered by Executive Agencies and subject to the non-discrimination protections of Section 1557.

80.     By excluding from coverage LGBTQ individuals who must rely on donor sperm or eggs to conceive, the Member Gamete Requirements as set forth in the VA 2019 Regulations, VHA Directives 1332 and 1334, and the 2012 DoD Policy Memo discriminate against Plaintiff and its members on the basis of sex in violation of Section 1557.

## CLAIM II

### Violations of the Fifth Amendment of the United States Constitution's
### Guarantee of Equal Protection – Sex Discrimination (Against Both Defendants)

81.     The allegations of the preceding paragraphs are incorporated by reference as if they were fully set forth herein.

82.     The Member Gamete Requirements, as set forth in the 2023 VA IVF Appropriations Statute, VA 2019 Regulations, VHA Directives 1332 and 1334, and 2012 DoD Policy Memo, violate the equality guarantees of the Fifth Amendment because they discriminate against members of Plaintiff NOW-NYC on the basis of sex.

83.     Under Defendants' policies, IVF coverage is based on the sex of the members of a covered couple. If a benefits recipient is a married man with service-related infertility who can produce his own gametes, he and his spouse may be eligible for IVF if he is married to a woman. On the other hand, if that benefits recipient is a woman able to produce her own gametes and married to a woman, she and her spouse are denied the same coverage. This discrimination based on the sex of the members of a same-sex couple is discrimination based on sex.

**CLAIM III**

**Violations of the Fifth Amendment of the United States Constitution's**
**Guarantee of Equal Protection – Marital Status Discrimination (Against Both Defendants)**

84.    The allegations of the preceding paragraphs are incorporated by reference as if they were fully set forth herein.

85.    The Marriage Requirements and the Member Gamete Requirements, as set forth in the 2023 VA IVF Appropriations Statute, VA 2019 Regulations, VHA Directives 1332 and 1334, and 2012 DoD Policy Memo, violate the equality guarantees of the Fifth Amendment because they exclude unmarried veterans and service members from coverage on their face.

86.    The 2012 DoD Policy Memo, which forms the basis for DoD and VA's provision of IVF benefits, states that IVF benefits are "limited to permitting a qualified member to procreate with his or her lawful spouse." VA regulations and VHA Directive 1334 likewise limit eligibility for IVF services to a "legally married couple." Under the plain language of the Marriage Requirements contained in the DoD Memo and VA regulations and policies, it is impossible for single or otherwise unmarried veterans and service members to obtain coverage.

87.    Even without the facially discriminatory Marriage Requirements, single veterans and service members would still be prohibited from obtaining IVF benefits because of the Member Gamete Requirements. A single person can only provide their own sperm or eggs (failing the Two Gamete Requirement) and therefore cannot utilize IVF without using donor gametes (failing the Donor Gamete Prohibition). Thus, the Member Gamete Requirements also unlawfully discriminate on the basis of marital status.

88.    Discrimination on the basis of marital status is subject to heightened or "intermediate" scrutiny, because unmarried people have historically faced discrimination and disadvantage under American law and are a quasi-suspect class.

89.     The Marriage Requirements and the Member Gamete Requirements fail this standard of review because they do not further important governmental interests.

90.     In the alternative, the Marriage Requirements and the Member Gamete Requirements fail rational basis review because the categorical exclusion of unmarried persons is not rationally related to any legitimate state interest.

## CLAIM IV

**Violations of the Fundamental Right to Marry Guaranteed by the Due Process Clause and Equality Guarantees of the Fifth Amendment of the United States Constitution (Against Both Defendants)**

91.     The allegations of the preceding paragraphs are incorporated by reference as if they were fully set forth herein.

92.     The right to freedom of choice regarding marriage is a deeply entrenched right under the United States Constitution and is fundamental to the liberty guaranteed by the Fifth Amendment. *Loving v. Virginia*, 388 U.S. 1 (1967); *Zablocki v. Redhail*, 434 U.S. 374 (1978); *Boddie v. Connecticut*, 401 U.S. 371 (1971).

93.     The Marriage and Member Gamete Requirements, as set forth in the 2023 VA IVF Appropriations Statute, VA 2019 Regulations, VHA Directives 1332 and 1334, and 2012 DoD Policy Memo, prevent unmarried veterans and service members from obtaining IVF benefits, and thereby burden their fundamental right to freedom of choice regarding marriage.

94.     State action implicating fundamental rights is subject to strict scrutiny and is permissible only if it is narrowly tailored to serve a compelling state interest. The Marriage Requirements and the Member Gamete Requirements cannot withstand this exacting review.

95.     Furthermore, members of Plaintiff NOW-NYC have been denied equal protection on the basis of their exercise of their fundamental right to freedom of choice regarding marriage.

**CLAIM V**

**Violation of the Fundamental Right to Procreate Guaranteed by the Due Process Clause and Equality Guarantees of the Fifth Amendment to the United States Constitution (Against Both Defendants)**

96.    The allegations of the preceding paragraphs are incorporated by reference as if they were fully set forth herein.

97.    By excluding from coverage same-sex couples, couples unable to produce their own gametes, unmarried veterans and service members, and veterans and service members without a diagnosed service connection or Category II or III illness for their infertility, the Discriminatory Provisions, as set forth in the 2023 VA IVF Appropriations Statute, VA 2019 Regulations, VHA Directives 1332 and 1334, and 2012 DoD Policy Memo, violate Plaintiff's members' rights to liberty, privacy, and equality as guaranteed by the Due Process Clause of the Fifth Amendment.

98.    The right to procreate is fundamental and within the scope of the Fifth Amendment's guarantee of the rights to liberty and equality. *See Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535 (1942); *Griswold v. Connecticut*, 381 U.S. 479 (1965).

99.    The Discriminatory Provisions prevent veterans and service members who are in same-sex couples, are unable to produce their own gametes, are unmarried, or lack a service-connected disability or Category II or III illness causing infertility from obtaining IVF benefits and thereby impinge on their fundamental right to procreate guaranteed by the Fifth Amendment.

100.    Government action implicating fundamental rights is subject to strict scrutiny and is permissible only if it is narrowly tailored to serve a compelling state interest. The Discriminatory Provisions cannot withstand this exacting review.

101.    Furthermore, members of Plaintiff NOW-NYC have been denied equal protection on the basis of their exercise of their fundamental right to procreate.

## CLAIM VI

**Violation of the Due Process Clause of the Fifth Amendment to the United States Constitution – Irrational Service-Connection Requirements (Against Both Defendants)**

102.    The allegations of the preceding paragraphs are incorporated by reference as if they were fully set forth herein.

103.    The Service-Connection Requirements, as set forth in the 2023 VA IVF Appropriations Statute, VA 2019 Regulations, VHA Directives 1332 and 1334, and 2012 DoD Policy Memo, limit the availability of IVF services to active-duty service members whose infertility is related to a Category II or III illness or injury and to veterans whose infertility is "service-connected."

104.    By contrast, other healthcare services are available to TRICARE and VHA beneficiaries without the need for an additional designation of service-relatedness. For VA, this includes other fertility care: other fertility treatments are available to beneficiaries without regard for whether their fertility struggles have a diagnosed service connection.

105.    As for DoD, other federal employees are able to access IVF services (for example, through coverage in FEHB plans) without regard to the source of their struggles with infertility.

106.    The Service-Connection Requirements are not rationally related to any legitimate government interest and thus violate the Due Process Clause of the Fifth Amendment.

## CLAIM VII

**Violation of the Due Process Clause of the Fifth Amendment to the United States Constitution – Irrational Donor Gamete Exclusion (Against Defendant VA)**

107.    The allegations of the preceding paragraphs are incorporated by reference as if they were fully set forth herein.

108.    The Donor Gamete Prohibition, as set forth in the 2023 VA IVF Appropriations Statute, VA 2019 Regulations, and VHA Directives 1332 and 1334, proscribes the use of donor gametes for IVF services even where beneficiaries meet all other eligibility criteria. By contrast, VHA beneficiaries may use donor gametes for other fertility treatments such as IUI.

109.    The Donor Gamete Prohibition is not rationally related to any legitimate government interest and thus violates the Due Process Clause of the Fifth Amendment.

## CLAIM VIII

**Violations of the Administrative Procedure Act (APA), 5 U.S.C. §706(2)(A)
– Arbitrary and Capricious (Against Defendant DoD)**

110.    The allegations of the preceding paragraphs are incorporated by reference as if they were fully set forth herein.

111.    The issuance of the 2012 DoD Policy Memo is a final agency action.

112.    Application of the 2012 DoD Policy Memo in 2023 to deny IVF services to active-duty service members who are members of NOW-NYC is also final agency action.

113.    The Discriminatory Provisions that exclude certain service members and veterans from coverage constitute arbitrary agency action, in violation of the APA, 5 U.S.C. § 706(2)(A).

114.    Agency rules or actions that are not "reasoned" are invalid under the APA. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983).

115.    Defendant DoD failed to offer any reasoned explanation for the inclusion of the Discriminatory Provisions in its IVF policies.

116.    Defendant DoD failed to provide adequate justification for the several ways in which the Discriminatory Provisions exclude similarly situated individuals from coverage and otherwise diverge from current understandings of and approaches to families and family-building.

117.    First, the Discriminatory Provisions exclude from coverage (i) unmarried service members, whether single or in a committed relationship; (ii) married service members with the same reproductive organs as their spouse; (iii) service members incapable of producing their own gametes regardless of marital status or sexual orientation; and (iv) service members lacking a Category II or III illness causing infertility. These four groups of individuals are excluded from coverage despite being otherwise similarly situated to those who can access IVF through TRICARE: they all need IVF services in order to conceive.

118.    Second, the Discriminatory Provisions are arbitrary and capricious because, by restricting access to IVF to married couples with opposite-sex reproductive organs, they erroneously reflect unsubstantiated and discriminatory ideas of who should be parents.

119.    Third, the Discriminatory Provisions are arbitrary and capricious because they have not been updated to reflect changing legal understandings of marriage and family formation. Defendant DoD has failed to consider the impact of *Obergefell v. Hodges*, 576 U.S. 644 (2015) (invalidating refusal to recognize marriage of same-sex couples as violating due process and equal protection) on the 2012 DoD Policy Memo. The Memo predates *Obergefell* and reflects an antiquated and unlawful understanding of which service members will marry and build families.

120.    Fourth, the Discriminatory Provisions are arbitrary and capricious because they are inconsistent with how the federal government regulates access to IVF services for other federal employees. IVF services are made available to other federal employees irrespective of marital status, sexual orientation, or service-connected injury. Defendant DoD has failed to adequately reconcile its IVF policies with existing federal policies.

121.    Finally, the Discriminatory Provisions are arbitrary and capricious because they are not in accord with policies on parenthood of the rest of the military. Other DoD policies pertaining

to parenthood, such as the various benefits available for service member dependents, acknowledge and support the ability of LGTBQ+ service members to build families and have children.

## CLAIM IX

**Violations of the Administrative Procedure Act, 5 U.S.C. § 706(2)(B) – Contrary to the U.S. Constitution (Against Both Defendants)**

122.    The allegations of the preceding paragraphs are incorporated by reference as if they were fully set forth herein.

123.    By violating the Fifth Amendment's guarantees of equal protection on the basis of sex and marital status, and the Fifth Amendment's Due Process Clause's protections, including of the fundamental rights to procreate and marry, the Discriminatory Provisions, as set forth in the VA 2019 Regulations, VA Directives 1332 and 1334, and 2012 DoD Policy Memo, violate the APA's guarantee of constitutional agency actions in 5 U.S.C. § 706(2)(B).

## CLAIM X

**Violations of the Administrative Procedure Act, 5 U.S.C. § 706(2)(C) – Contrary to Federal Statute (Against Both Defendants)**

124.    The allegations of the preceding paragraphs are incorporated by reference as if they were fully set forth herein.

125.    The Discriminatory Provisions, as set forth in the VA 2019 Regulations, VA Directives 1332 and 1334, and 2012 DoD Policy Memo, discriminate on the basis of sex in violation of Section 1557 of the Affordable Care Act.

126.    By violating Section 1557, Defendants violate the Administrative Procedure Act, 5 U.S.C. § 706(2)(C) for agency action short of a statutory right.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

(1)     Issue a declaratory judgment that the challenged Discriminatory Provisions in Defendants' IVF policies—namely, the Marriage Requirements, the Member Gamete Requirements, and the Service-Connection Requirements—violate Section 1557 of the ACA, the Administrative Procedure Act, and the Fifth Amendment, and are unlawful;

(2)     Enjoin Defendants from enforcing the Discriminatory Provisions in their IVF coverage policies;

(3)     Award reasonable attorneys' fees and costs; and

(4)     Grant any other and further relief that the Court deems just and proper.


Respectfully submitted,

By: /s/ Michael J. Wishnie
Yael Caplan, Law Graduate[*]
Leah Fessler, Law Student Intern[*]
K.N. McCleary, Law Student Intern[*]
Renée Mihail, Law Student Intern[*]
Natalia Friedlander[**]
Michael J. Wishnie, MW1952
Veterans Legal Services Clinic
Yale Law School
P.O. Box 209090
New Haven, CT 06520-9090
(203) 432-4800
michael.wishnie@ylsclinics.org

/s/ Priscilla J. Smith
Trudel Pare, Law Student Intern[*]
Jessica Quinter, Law Graduate [*]
Grace Sullivan, Law Student Intern[*]
Priscilla J. Smith, PS6961
Reproductive Rights and Justice Project
Information Society Project
Yale Law School
319 Sterling Pl.
Brooklyn, NY 11238
(347) 262-5177
priscilla.smith@ylsclinics.org


[*] Motions for Law Student Appearances forthcoming
[**] Motion for leave to appear *pro hac vice* forthcoming