# The Jerome N. Frank Legal Services Organization

YALE LAW SCHOOL

January 25, 2024

**Attn: The Honorable Valerie E. Caproni**
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

Re: *National Organization for Women – New York City v. U.S. Department of Defense and U.S. Department of Veterans Affairs*; Case No. 23-CV-6750 (VEC)

Dear Judge Caproni:

  We represent plaintiff National Organization for Women – New York City ("NOW-NYC" or "Plaintiff") in the above-referenced action. We have conferred with counsel for defendants U.S. Department of Defense ("DoD") and U.S. Department of Veterans Affairs ("VA") (collectively, "the Government" or "Defendants"), and submit this joint letter on behalf of the parties. We have also submitted on behalf of NOW-NYC a Civil Case Management Plan and Scheduling Order (attached as Exhibit A) in accordance with the Court's August 4, September 29, and January 2 orders (ECF. No. 9, ECF No. 17, ECF No. 31). As set forth in Section 5 below, Defendants do not join in Plaintiff's attached Civil Case Management Plan and Scheduling Order, and respectfully request an adjournment of the initial conference scheduled for February 2, 2024, at 10:00 a.m. (ECF No. 31) in light of the current stay of the claims challenging both the DoD and VA's Marriage Requirement and Member Gamete Requirement in this case until April 15, 2024, and Defendants' dispositive motion to be filed tomorrow—which, among other things, challenges this Court's jurisdiction over Plaintiff's claims. Defendants will also file a letter motion on January 30, 2024, to request a stay of discovery.

1. **Brief Description of the Case, including the factual/legal bases for claims/defenses:**

<u>Plaintiff:</u>

  Plaintiff NOW-NYC brings this action against Defendants on behalf of itself and its active-duty military and veteran members who are facially excluded from receiving or have been denied in vitro fertilization ("IVF") services by Defendants' policies. TRICARE, the military health program operated by defendant DoD, and the Veterans Health Administration ("VHA"), a part of defendant VA, respectively provide fertility care for many service members and veterans. Fertility care is critical for many service members and veterans to form families. Research suggests that service members and veterans experience infertility at higher rates than civilians. IVF, the most common and effective artificial reproductive technology, is unaffordable to many service members and veterans absent coverage.

  Defendants' currently effective policies restrict eligibility for IVF coverage to service members and veterans who (1) are lawfully married (for active-duty service members) or in a lawful cisgender, opposite-sex marriage (for veterans) ("Marriage Requirement"); (2) can provide their own gametes (sperm and egg) ("Gamete Requirement"); and (3) struggle with fertility due to a "serious or severe" illness or injury from service (for active-duty service members) or a "service-

connected" disability (for veterans) ("Service-Connection Requirement"). Defendants' IVF policies thus facially exclude service members and veterans who are (1) single or in an unmarried couple; (2) unable to use their own gametes; (3) in a same-sex couple or a couple with the same reproductive organs; or (4) lacking a service-connected disability or serious illness causing infertility. Defendants' IVF eligibility requirements are set forth in a memorandum issued by DoD in 2012 and in regulations promulgated by VA in 2019 and clarified via agency guidance to implement annual appropriations. *See* U.S. Dep't. of Def., Implementing Guidance Memorandum: Policy for Assisted Reproductive Services for the Benefit of Seriously or Severely Ill/Injured (Category II or III) Active Duty Service Members (ADSMS) (April 3, 2012); Pub. L. No. 114-223, § 260, 130 Stat. 857, 897 (2017); Pub. L. No. 117-328, § 234, 136 Stat. 4459 (2023); 38 C.F.R. § 17.380; VHA Directive 1332(2) (Jun. 20, 2017; amended Aug. 12, 2019); VHA Directive 1334 (Mar. 12, 2021).

Plaintiff alleges that Defendants' policies unlawfully discriminate against service members and veterans on the bases of sex, sexual orientation, marital status, and/or the cause of their infertility, and are arbitrary and irrational, in violation of Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557"), the Fifth Amendment of the United States Constitution, and the Administrative Procedure Act ("APA").

Plaintiff further alleges that Defendants' discriminatory IVF eligibility provisions undermine Plaintiff's organizational mission and burden its members. Defendants' policies leave Plaintiff's active duty and veteran members bereft of the ability to build families because of their marital status, their sexual orientation, or the medical origins of their infertility.

In September 2023, Plaintiff consented to Defendants' request for an 80-day extension of time to respond to the complaint, an 85-day extension of the parties' deadline to submit a joint pre-initial conference letter and a proposed Civil Case Management Plan and Scheduling Order, and an adjournment of the initial pretrial conference until January 19, 2024 (ECF No. 17). The extensions served to allow the Defendants time to review the IVF policies that are the subject of this lawsuit. *Id*.

As of December 2023, DoD represents that it will amend its policy regarding IVF benefits to remove the Marriage Requirement and to remove the categorical bar on the use of donor gametes. (ECF No. 28 at 2). DoD is in the process of determining the exact contours of these policy amendments, and expects to finalize and share with Plaintiff a signed memorandum by the end of February 2024 that formally directs the amendments and provides further details on their scope. *Id*. DoD will then begin the process of formally implementing these policy amendments. As of the date of this letter, VA represents that it will also make changes to its IVF policy to align the coverage it provides with that available under the forthcoming amended DoD policy.

On January 2, 2024, the Court stayed this matter until April 15, 2024, with respect to Plaintiff's claims challenging DoD's and VA's Marriage and Gamete Requirements but declined to stay Plaintiff's claims challenging the agencies' Service-Connection Requirements (ECF No. 31). NOW-NYC seeks injunctive and declaratory relief on behalf of itself and its members enjoining Defendants from enforcing the discriminatory eligibility provisions of their IVF policies and declaring those provisions unlawful. Though Defendants might soon revise their policies to remove the Marriage and Gamete Requirements, Plaintiff alleges that their Service-Connection Requirements are corrosive to the dignity of NOW-NYC members, arbitrary and capricious, unrelated to any legitimate governmental interest, and unlawful.

Defendants:

In 2010, DoD's Assistant Secretary of Defense approved the provision of IVF benefits for certain service members, which had been authorized by the National Defense Authorization Act for Fiscal Year 2008, Pub. L. No. 110-181, § 1633, 122 Stat. 3, 459 (2008). The statute enabled DoD to use appropriated funds to cover healthcare services "comparable to that provided by the [DoD] Secretary under subsections (d) and (e) of section 1079 of this title . . . to members of the uniformed services who incur a serious injury or illness on active duty as defined by regulations prescribed by the Secretary." 10 U.S.C. § 1074(c)(4)(A) (emphasis added). Section 1079(d), in relevant part, provides for certain healthcare benefits "to assist in the reduction of the disabling effects of a qualifying condition." Consistent with Congress's directive to promulgate regulations defining "serious injury or illness," *id.* § 1074(c)(4)(B)(ii), the Secretary of Defense promulgated DoD Directive 1300.24 (2009),[1] which defines "Service Member Care Coordination Categories," including Category II as a "serious injury or illness" and Category III as "a severe or catastrophic injury or illness." Relying on the authorization in 10 U.S.C. § 1074(c)(4)(A), DoD implemented its IVF policy via an April 3, 2012 "Implementing Guidance Memorandum" titled "Policy for Assisted Reproductive Services for the Benefit of Seriously or Severely Ill/Injured (Category II or III) Active Duty Service Members (hereinafter "2012 DoD Memo."). Compl. Ex. A. The 2012 DoD Memo sets forth the availability of expanded benefits for IVF for certain active-duty service members and the specific eligibility requirements for this coverage, which limit these expanded benefits to those who sustained a Category II or Category III injury or illness "while on active duty that led to the loss of their natural procreative ability." *Id.* §§ II, III.A, IV.

In 2017, the Continuing Appropriations and Military Construction, Veterans Affairs, and Related Agencies Appropriations Act authorized VA to use appropriated medical services funds to provide IVF services to certain veterans. Compl. ¶ 22 (citing Pub. L. No. 114-223, § 260, 130 Stat. 857, 897 (2017)). That authorization has been renewed regularly by Congress, including most recently in the Consolidated Appropriations Act, 2023. Pub. L. No. 117-328, Division J, Title II, § 234, 136 Stat. 4459, 4949 (2023) ("VA Appropriations Act"). *Id.* ¶ 30; Compl. Ex. D. The 2023 VA Appropriations Act, as in earlier years, provides that funds appropriated to VA "may be used to provide . . . fertility counseling and treatment using assisted reproductive technology to a covered veteran or the spouse of a covered veteran." Compl. Ex. D, § 243(a)(1). The statute further defines a "covered veteran" to mean "a veteran . . . who has a service-connected disability that results in the inability of the veteran to procreate without the use of fertility treatment." *Id.* § 234(b)(2). After Congress authorized VA to cover certain IVF services, VA promulgated an Interim Final Rule on January 19, 2017, *see* 82 Fed. Reg. 6273, which was finalized on March 7, 2019, *see* 84 Fed. Reg. 8254; 38 C.F.R. § 17.380. Under the 2019 VA regulation, IVF benefits may be provided to a "veteran who has a service-connected disability that results in the inability of the veteran to procreate without the use of fertility treatment" and such a veteran's spouse. 38 C.F.R. § 17.380(a)(1). VHA Directive 1334, dated March 12, 2021, memorializes the VA's policy for provision of IVF services to eligible veterans and their spouses. Compl. Ex. C, § 1.a.

On August 2, 2023, Plaintiff filed the instant suit against DoD and VA, challenging the agencies' current IVF policies insofar as they require that service members and veterans seeking IVF coverage meet the Marriage Requirement, Compl. ¶ 6; the Gamete Requirement, *id.*; and the

---

[1] Available at https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodi/130024p.pdf, at Encl. 4.

3

Service-Connection Requirement, *id.* ¶ 7. In December 2023, DoD determined that it would amend its IVF policy to remove the Marriage Requirement and the categorical bar on the use of donor gametes. (ECF No. 28, at 2). DoD is currently in the process of determining the exact contours of the policy amendments, which it expects to finalize by the end of February 2024, and will then begin the process of effectuating their implementation. *Id.* Like DoD, VA has been reviewing its IVF policy, and that process remains ongoing. *Id.* Because the statutory authorities governing VA make DoD's impending policy amendments relevant to VA's IVF policy, and given VA's continued commitment to aiding veterans in starting families (subject to its legal and fiscal restrictions), VA has determined that it will also amend its IVF policy to align the coverage it provides with that available under the forthcoming amended DoD policy.

2. **Any Contemplated Motions:**

   Plaintiff:

   Plaintiff anticipates filing a motion for summary judgment in accordance with Rule 56 of the Federal Rules of Civil Procedure.

   Defendants:

   On January 26, 2024, Defendants will file a motion to dismiss the complaint under Rule 12(b)(1) based on various threshold deficiencies, and to dismiss in part under Rule 12(b)(6) Plaintiff's challenge to the SCD Requirement against both Defendants. On January 30, 2024, Defendants will also file a letter motion to stay discovery pending the Court's adjudication of Defendants' dispositive motion, and during the pendency of the current stay of litigation as to the Marriage and Gamete Requirements.

3. **Basis for Subject Matter Jurisdiction:**

   Plaintiff:

   This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1346. This action arises under 5 U.S.C. § 706 *et seq.* (APA), 42 U.S.C. § 18116 (Section 1557), and the Due Process Clause and equality guarantees of the Fifth Amendment of the U.S. Constitution. An actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a), and this Court may grant declaratory relief, injunctive relief, and other relief pursuant to 5 U.S.C. §§ 705-06, 42 U.S.C. § 18116, and the Constitution.

   Defendants:

   As Defendants' motion, to be filed tomorrow, will set forth, Defendants contest subject matter jurisdiction.

4. **The Prospect for Settlement:**

   The parties agree that there does not appear to be a realistic prospect for settlement at this time.

5. **Whether the Parties believe a Rule 16 Conference would be helpful and/or Proposed Case Management Plan:**

Plaintiff:

Plaintiff believes that a Rule 16 Conference would be helpful and has submitted a proposed Civil Case Management Plan and Scheduling Order with this letter. Defendants do not join in Plaintiff's proposed Civil Case Management Plan and Scheduling Order.

Defendants:

While the Court's initial conference order directs the parties to submit a jointly-proposed Civil Case Management Plan and Scheduling Order (ECF No. 9), Defendants respectfully request that the parties' obligation to do so be suspended and that the Rule 16 conference currently scheduled for February 2, 2024, at 10:00 a.m. be adjourned (ECF No. 31), pending the resolution of Defendants' anticipated motions to dismiss Plaintiff's complaint, including the Service-Connection Requirement claims, and to stay discovery, and during the Court's current stay of the litigation as to the Marriage Requirement and the Gamete Requirement claims.

|  |  |
|---|---|
| /s/ Michael J. Wishnie<br>Natalie Geismar, Law Student Intern<br>K.N. McCleary, Law Student Intern<br>Renée Mihail, Law Student Intern<br>Briana Thompson, Law Student Intern<br>Natalia Friedlander, pro hac vice<br>Michael J. Wishnie, MW1952<br>Veterans Legal Services Clinic<br>Yale Law School<br>New Haven, CT 06520-9090<br>(203) 432-4800<br>michael.wishnie@ylsclinics.org<br><br>/s/ Priscilla J. Smith<br>Donovan Bendana, Law Student Intern<br>Rosemary Coskrey, Law Student Intern<br>Trudel Pare, Law Student Intern<br>Grace Sullivan, Law Student Intern<br>Priscilla J. Smith PS6961<br>Reproductive Rights and Justice Project<br>Yale Law School<br>319 Sterling Pl.<br>Brooklyn, NY 11238<br>(347) 262-5177<br>priscilla.smith@ylsclinics.org<br><br>*Counsel for Plaintiffs* | Respectfully submitted,<br><br>DAMIAN WILLIAMS<br>United States Attorney for the<br>Southern District of New York<br><br>By: /s/ Tomoko Onozawa<br>Assistant United States Attorney<br>Telephone: (212) 637-272<br>Facsimile: (212) 637-2717<br>E-mail: tomoko.onozawa@usdoj.gov<br><br>*Counsel for Defendants* |