**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NATIONAL ORGANIZATION FOR WOMEN-NEW YORK CITY,<br><br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF DEFENSE, and UNITED STATES DEPARTMENT OF VETERANS AFFAIRS,<br><br>Defendants. | 23 Civ. 6750 (VEC) |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND .................................................................................................................... 4

I.      Statutory and Regulatory Background............................................................................ 4

        A.      DoD's IVF Benefits for Active-Duty Service Members .................................... 4

        B.      VA's IVF Benefits for Veterans under VHA ....................................................... 7

II.     Factual Background ........................................................................................................ 9

STANDARD OF REVIEW ................................................................................................... 10

ARGUMENT ....................................................................................................................... 11

I.      Plaintiff Lacks Standing.............................................................................................. 11

        A.      Plaintiff Lacks Organizational Standing............................................................ 11

        B.      Plaintiff Lacks Associational Standing Because It Has Not Identified Any
                Member Whose Rights It Seeks to Vindicate ...................................................... 12

        C.      Plaintiff Further Lacks Associational Standing to Challenge DoD's SCD
                Condition Because No Member is Alleged to Have Been Injured by It.............. 14

        D.      Plaintiff Further Lacks Associational Standing to Challenge the SCD
                Conditions Because This Court Cannot Redress the Alleged Injury ................... 15

II.     The VJRA Divests the Court of Jurisdiction Over Plaintiff's Claims Against VA.......... 17

III.    Plaintiff Fails to State a Substantive Due Process Claim Against the Agencies' SCD
        Conditions ................................................................................................................... 19

IV.     Plaintiff Fails to State an Arbitrary and Capricious Claim under the APA Against
        DoD's SCD Condition ................................................................................................. 23

CONCLUSION .................................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Allco Fin. Ltd. v. Klee*,
    861 F.3d 82 (2d Cir. 2017)..........................................................................................15

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
    671 F.3d 140 (2d Cir. 2011).......................................................................................10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................................11

*Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*,
    968 F.2d 196 (2d Cir. 1992).......................................................................................10

*Baz v. U.S. Dep't of Homeland Sec.*,
    No. 1:18-CV-01013 (CJN), 2019 WL 5102827 (D.D.C. Oct. 11, 2019) .................15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................................................................................11

*Brass v. Am. Film Tech., Inc.*,
    987 F.2d 142 (2d Cir. 1993).......................................................................................10

*Califano v. Aznavorian*,
    439 U.S. 170 (1978)...................................................................................................22

*Carter v. HealthPort Techs., LLC*,
    822 F.3d 47 (2d Cir. 2016).........................................................................................10

*Catskill Mountains Chapter of Trout Unlimited, Inc. v. EPA*,
    846 F.3d 492 (2d Cir. 2017).......................................................................................24

*Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*,
    868 F.3d 104 (2d Cir. 2017).......................................................................................12

*Connecticut Parents Union v. Russell-Tucker*,
    8 F.4th 167 (2d Cir. 2021) ...................................................................................11, 12

*Cont'l Air Lines, Inc. v. Dep't of Transp.*,
    843 F.2d 1444 (D.C. Cir. 1988).................................................................................24

*Daogaru v. U.S. Att'y Gen.*,
    683 F. App'x 824 (11th Cir. 2017) ............................................................................16

*Dark Storm Indus. LLC v. Cuomo*,
    471 F. Supp. 3d 482 (N.D.N.Y. 2020).........................................................................5

*Davis v. Fed. Election Comm'n*,
  554 U.S. 724 (2008) ................................................................................................ 11

*Delta Const. Co. v. EPA*,
  783 F.3d 1291 (D.C. Cir. 2015) .............................................................................. 15

*Disabled Am. Veterans v. U.S. Dep't of Veterans Affs.*,
  962 F.2d 136 (2d Cir. 1992) .................................................................................... 18

*Do No Harm v. Pfizer Inc.*,
  646 F. Supp. 3d 490 (S.D.N.Y. 2022) .............................................................. 13, 14

*Equal Vote Am. Corp. v. Cong.*,
  397 F. Supp. 3d 503 (S.D.N.Y. 2019) .................................................................... 13

*FCC v. Beach Commc'ns, Inc.*,
  508 U.S. 307 (1993) ............................................................................ 20, 21, 22, 23

*Gladstone Realtors v. Vill. of Bellwood*,
  441 U.S. 91 (1979) .................................................................................................. 14

*Harris v. McRae*,
  448 U.S. 297 (1980) ................................................................................................ 20

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982) ................................................................................................ 12

*Heckler v. Ringer*,
  466 U.S. 602 (1984) ................................................................................................ 19

*Heller v. Doe by Doe*,
  509 U.S. 312 (1993) ................................................................................................ 22

*Hong v. Sec. & Exch. Comm'n*,
  143 S. Ct. 450 (2022) .............................................................................................. 25

*Hong v. U.S. Sec. & Exch. Comm'n*,
  41 F.4th 83 (2d Cir. 2022) ...................................................................................... 25

*Hunt v. Wash. State Apple Advert. Comm'n*,
  432 U.S. 333 (1977) ................................................................................................ 11

*Irish Lesbian & Gay Org. v. Giuliani*,
  143 F.3d 638 (2d Cir. 1998) .............................................................. 11, 13, 14, 15

*Judulang v. Holder*,
  565 U.S. 42 (2011) .................................................................................................. 24

*Larrabee by Jones v. Derwinski*,
   968 F.2d 1497 (2d Cir. 1992)..................................................................... 17, 18

*Leger v. Kalitta*,
   No. 16-CV-6545, 2018 WL 2057142 (E.D.N.Y. Jan. 26, 2018) ................................ 5

*Liu v. United States Cong.*,
   834 F. App'x 600 (2d Cir. 2020) ........................................................................ 13

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992).......................................................................................... 14

*Mahon v. Ticor Title Ins. Co.*,
   683 F.3d 59 (2d Cir. 2012).......................................................................... 14, 15

*McCarthy v. Dun & Bradstreet Corp.*,
   482 F.3d 184 (2d Cir. 2007)............................................................................... 10

*Mercer Outdoor Advert., LLC v. City of Hermitage*,
   605 F. App'x 130 (3d Cir. 2015) ....................................................................... 16

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) ............................................................................................ 24

*Nat'l Ass'n of Regul. Util. Comm'rs v. ICC*,
   41 F.3d 721 (D.C. Cir. 1994) ............................................................................. 24

*Nordlinger v. Hahn*,
   505 U.S. 1 (1992)............................................................................................... 20

*Off. of Pers. Mgmt. v. Richmond*,
   496 U.S. 414 (1990)........................................................................................... 17

*Pen Am. Ctr., Inc. v. Trump*,
   448 F. Supp. 3d 309 (S.D.N.Y. 2020).................................................................. 13

*"Q"-Lungian Enterprises, Inc. v. Town of Windsor Locks*,
   272 F. Supp. 3d 289 (D. Conn. 2017).................................................................. 16

*Rust v. Sullivan*,
   500 U.S. 173 (1991)........................................................................................... 20

*Rynasko v. New York Univ.*,
   63 F.4th 186 (2d Cir. 2023) ............................................................................... 21

*Schweiker v. Wilson*,
   450 U.S. 221 (1981)...................................................................................... 21, 23

iv

*Simon v. E. Ky. Welfare Rts. Org.*,
    426 U.S. 26 (1976) ............................................................................................. 12

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ............................................................................... 11, 14, 15

*Sugrue v. Derwinski*,
    26 F.3d 8 (2d Cir. 1994) ..................................................................................... 18

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ........................................................................................... 13

*Tandon v. Captain's Cove Marina of Bridgeport, Inc.*,
    752 F.3d 239 (2d Cir. 2014) ............................................................................... 10

*Texas v. EPA*,
    726 F.3d 180 (D.C. Cir. 2013) ........................................................................... 17

*Town of Chester v. Laroe Ests., Inc.*,
    581 U.S. 433 (2017) ........................................................................................... 11

*U.S. Commodity Futures Trading Comm'n v. Amaranth Advisors, LLC*,
    523 F. Supp. 2d 328 (S.D.N.Y. 2007) ............................................................... 19

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
    549 F.3d 100 (2d Cir. 2008) ............................................................................... 15

*Warth v. Seldin*,
    422 U.S. 490 (1975) ........................................................................................... 11

**Statutes**

5 U.S.C. § 706 .......................................................................................................... 19

10 U.S.C. § 1072 ........................................................................................................ 4

10 U.S.C. § 1073d .................................................................................................... 23

10 U.S.C. § 1074 ............................................................................................. *passim*

10 U.S.C. § 1079 ........................................................................................... 5, 16, 25

38 U.S.C. § 502 ........................................................................................................ 19

38 U.S.C. § 511 ........................................................................................................ 17

38 U.S.C. § 1710 ...................................................................................................... 23

38 U.S.C. § 7252 ...................................................................................................... 17

38 U.S.C. § 7292 ......................................................................................... 17, 18

Pub. L. No. 110-181, 122 Stat. 3 (2008) ............................................................. 4

Pub. L. No. 114-223, 130 Stat. 857 (2017) ......................................................... 7

Pub. L. No. 117-328, 136 Stat. 4459 (2023) .................................................. 7, 16

**Legislative Materials**

159 Cong. Rec. S3611 (May 20, 2013) ............................................................. 21

**Rules**

Fed. R. Civ. P. 12 ......................................................................................... 1, 10

**Regulations**

5 C.F.R. § 890.203 ........................................................................................... 23

5 C.F.R. § 890.502 ........................................................................................... 23

32 C.F.R. §199.1 .............................................................................................. 23

32 C.F.R. § 199.17 ........................................................................................... 23

38 C.F.R. § 17.36 ............................................................................................. 23

38 C.F.R. § 17.380 .......................................................................................... 2, 8

82 Fed. Reg. 6273 (Jan. 19, 2017) ..................................................................... 8

84 Fed. Reg. 8254 (Mar. 7, 2019) ...................................................................... 8

**Other Authorities**

Benefits.gov, *Basic Medical Benefits Package for Veterans*,
    https://perma.cc/86CW-NJ3Q ..................................................................... 23

Dep't of Def. Directive 1300.24, Recovery Coordination Program (RCP) (Dec. 1, 2009),
    https://perma.cc/49AG-2N76 ....................................................................... 5

Dep't of Def., Policy for Assisted Reproductive Services for the Benefit of Seriously or
    Severely/Injured (Category II or III) Active Duty Service Members (Apr. 3, 2012)............ 5, 6

Dep't of Veterans Affs., VHA Directive 1334, In Vitro Fertilization Counseling and Services
    Available to Certain Eligible Veterans and Their Spouses (Mar. 12, 2021) ............................ 8

Reproductive Biology and Endocrinology Journal, National Institute of Health, National
    Library of Medicine (Aug. 4, 2022), https://perma.cc/DC8N-EVPX ....................................... 21

VA, *Eligibility for community care outside VA*,
    https://perma.cc/ZTN8-YAHN ................................................................................................ 23

Defendants U.S. Department of Defense and U.S. Department of Veterans Affairs respectfully submit this memorandum of law in support of their motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), and their motion to dismiss in part pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

The U.S. Department of Defense ("DoD") and U.S. Department of Veterans Affairs ("VA") (together, "Defendants" or the "Agencies") have elected to provide in vitro fertilization ("IVF") benefits to military service members and veterans, respectively, if certain conditions are met. Plaintiff brought suit, claiming that three of those conditions are unlawful. Both DoD and VA recently determined that they would amend their IVF benefit policies and eliminate the bulk of the challenged restrictions.  Plaintiff, however, asserts that these changes do not go far enough. Rather, in Plaintiff's view, DoD and VA are constitutionally obligated to provide full IVF benefits to all beneficiaries, with no conditions. Plaintiff's legal theory is contrary to binding Supreme Court precedent and should be rejected.

The Agencies have provided IVF benefits to service members and veterans who, among other things, (i) are married, (ii) can use IVF to produce children biologically related to themselves and their lawful spouses (*i.e.*, they need not use donor gametes), and (iii) because of a service-connected disability, can produce children only by using fertility treatment. Plaintiff brought suit, challenging all three requirements.[1] Meanwhile, each agency had already been reviewing its respective IVF policy, and DoD recently determined that it would remove the categorical bar on IVF benefits for service members who are unmarried or who must use donor gametes to procreate.

---

[1] Defendants do not seek dismissal under Rule 12(b)(6) of Plaintiff's challenges to the Gametes Condition and the Marriage Condition, as described herein, *infra* at 9, because the Court has stayed litigation as to these claims until April 15, 2024.  *See* ECF No. 31.

DoD is in the process of finalizing the scope of those changes. VA has recently determined that DoD's policy changes will result in similar changes to VA's IVF policy.

Plaintiff nevertheless presses its challenge. It contends that the service-connected disability condition ("SCD Condition") in each agency's IVF policy[2] is unlawful based on its reasoning that service members and veterans have a substantive due process right to procreate, which purportedly includes a right to receive government benefits to facilitate procreation, and that the SCD Conditions violate the Administrative Procedure Act ("APA"). For several reasons, Plaintiff's challenges to the SCD Conditions lack merit and should be dismissed.

*First*, Plaintiff lacks standing to pursue any of its challenges to the Agencies' IVF policies. Plaintiff cannot establish organizational standing because it failed to plead a direct, involuntary injury that it suffered because of those policies. Instead, it alleges only that some elements of those policies are inconsistent with its abstract social interests, which is insufficient for organizational standing. Plaintiff also failed to establish associational standing because it must, but did not, identify by name at least one member who failed to secure IVF benefits due to any of the challenged conditions. And as to DoD, Plaintiff has not even alleged a single *unnamed* NOW-NYC member to whom the DoD denied IVF benefits for lack of a qualifying service-connected disability. Plaintiff thus further lacks standing to challenge DoD's SCD Condition specifically.

Furthermore, Plaintiff cannot establish that a favorable ruling would redress any alleged injury stemming from either Agency's SCD Condition because the Agencies are not authorized to provide IVF benefits to those who lack a qualifying injury under applicable law. Those restrictions

---

[2] As explained *infra*, DoD's and VA's requirements for satisfying this service-connected requirement are phrased differently. *Compare* 38 C.F.R. § 17.380(a)(1) (requiring "a service-connected disability that results in the inability of the veteran to procreate without the use of fertility treatment"), *with* Compl. Ex. A, § III.A (ECF No. 1-1) (requiring a "serious or severe illness/injury while on active duty that led to the loss of [the service member's] natural procreative ability"). Those differences are irrelevant to the issues raised in this motion, and for ease of reference, the requirements are collectively referred to as the SCD Conditions throughout this brief.

are unchallenged by Plaintiff and would remain binding on the Agencies even if the Court determined that the SCD Conditions in their respective IVF policies are somehow unlawful.

*Second*, even if Plaintiff could establish standing, the Veterans Judicial Review Act ("VJRA") divests this Court of jurisdiction over the claims against VA. The VJRA sets forth an exclusive scheme through which a party must assert any challenge to an adverse benefits determination—first, to the Board of Veterans Appeals, then to the Court of Appeals for Veterans Claims, and then to the Court of Appeals for the Federal Circuit. Here, regardless of how Plaintiff frames its challenge, this action in fact challenges a benefits determination: Plaintiff claims that the Agencies have improperly denied, and will continue to deny, IVF benefits to certain persons. Accordingly, the Court should not allow Plaintiff to sidestep the exclusive VJRA review scheme.

*Third*, Plaintiff's claims against the SCD Conditions fail on the merits. Its substantive due process claim fails because a fundamental right to procreate does not include an affirmative duty by the government to provide benefits to facilitate procreation. The Supreme Court has expressly and repeatedly held that although the Due Process Clause prevents the government from imposing unjustified burdens on the exercise of fundamental rights, the government is not required to subsidize the exercise of those rights. The SCD Conditions thus do not violate any fundamental right, and therefore need only survive the deferential rational basis test, which they do: Congress could reasonably have determined that funding for certain extended health benefits—which include IVF—should be allocated to remedy service-related injuries and illnesses that render service members and veterans unable to procreate naturally.

Finally, Plaintiff's arbitrary-and-capricious claim under the APA fails, at least insofar as it applies to DoD's SCD Condition, because Plaintiff misunderstands why DoD adopted that condition. Here the statutory directive granting DoD authority to provide extended benefits,

including IVF benefits, is predicated on a service-connected disability requirement. The only question for the Court then is whether DoD reasonably interpreted that statute as imposing a service-connected disability requirement. The Complaint is silent on that question—and, indeed, DoD's interpretation of the relevant statute was reasonable—and so the APA claim should be dismissed with respect to the SCD Condition.

The Court should therefore grant Defendants' motion.

## BACKGROUND

### I.    Statutory and Regulatory Background

Active-duty service members ("ADSMs") are ordinarily eligible for healthcare benefits through the TRICARE program, which is administered by DoD. ECF No. 1 ("Compl.") ¶¶ 13, 17; 10 U.S.C. § 1072(7). Veterans who qualify are generally eligible for healthcare through the Veterans Health Administration ("VHA"), which is administered by VA. Compl. ¶ 17. Historically, neither DoD nor VA provided IVF benefits. *Id.* ¶ 18. Following receipt of new statutory authority, however, both Agencies have elected to provide those benefits in certain circumstances, subject to statutory and resource constraints.

### A.   DoD's IVF Benefits for Active-Duty Service Members

In 2010, DoD's Assistant Secretary of Defense for Health Affairs approved the provision of IVF benefits for certain service members. *Id.* These benefits were authorized by the National Defense Authorization Act for Fiscal Year 2008, Pub. L. No. 110-181, § 1633, 122 Stat. 3, 459 (2008), which enabled DoD to use appropriated funds to cover healthcare services "comparable to that provided by the [DoD] Secretary under subsections (d) and (e) of section 1079 of this title . . . to members of the uniformed services who incur a serious injury or illness on active duty as defined by regulations prescribed by the Secretary." 10 U.S.C. § 1074(c)(4)(A). Section

1079(d)(1), in turn, provides for healthcare benefits to qualifying service members' dependents, known as "extended benefits," "to assist in the reduction of the disabling effects of a qualifying condition." The scope of these extended benefits, which include "services necessary to maintain, or minimize or prevent deterioration of, function of the patient," is set out in Section 1079(e). *Id.* § 1079(e)(1).

Consistent with Congress's directive to "prescribe in regulations . . . the definition of serious injury or illness," *id.* § 1074(c)(4)(B)(ii), the Secretary of Defense promulgated DoD Directive 1300.24 (2009),[3] defining "Service Member Care Coordination Categories." *Id.* at 14 (Encl. 4). Category II is defined as "a serious injury or illness" where the servicemember is "unlikely to return to duty within a time specified by his or her Military Department" and "[m]ay be medically separated from the military." *Id.* Category III is defined as "a severe or catastrophic injury or illness" where the servicemember is "highly unlikely to return to duty" and "[w]ill most likely be medically separated from the military." *Id.*

Relying on the authorization in 10 U.S.C. § 1074(c)(4)(A), DoD implemented its IVF policy in an April 3, 2012 "Implementing Guidance Memorandum" titled "Policy for Assisted Reproductive Services for the Benefit of Seriously or Severely Ill/Injured (Category II or III) Active Duty Service Members." Compl. ¶ 18; Compl. Ex. A (ECF No. 1-1) (hereinafter "2012 DoD Memo"). The 2012 DoD Memo lays out the IVF benefits available to ADSMs and the eligibility requirements for coverage. *See* Compl. Ex. A at 1-4, §§ III, IV.

Under the 2012 DoD Memo, IVF benefits are available "to service members, regardless of gender, who have sustained serious or severe illness/injury," *i.e.*, a Category II or III illness, "while

---

[3] Directive 1300.24 is available at https://perma.cc/49AG-2N76. The Court may take judicial notice of it as an official government record retrieved from a government website. *See, e.g.*, *Dark Storm Indus. LLC v. Cuomo*, 471 F. Supp. 3d 482, 490 n.2 (N.D.N.Y. 2020) (citing *Leger v. Kalitta*, No. 16-CV-6545, 2018 WL 2057142, at *3 (E.D.N.Y. Jan. 26, 2018)).

on active duty that led to the loss of their natural procreative ability." *Id.* at 1, §§ II, III.A; *see also id.* § III.B ("The policy provides for the provision of assisted reproductive technologies to assist in the reduction of the disabling effects of the member's qualifying condition"). The "[b]enefit . . . appl[ies] equally to male and female seriously or severely injured service members . . . ." *Id.* at 2, § III.D.

Under the 2012 DoD Memo, the IVF "benefit is designed to allow the member and spouse to become biological parents through reproductive technologies where the Active Duty injury or illness has made it impossible to conceive naturally." *Id.* § III.E. As such, benefits provided are currently "limited to permitting a qualified member to procreate with his or her lawful spouse," and "[t]hird party donations and surrogacy are not covered benefits." *Id.* §§ III.C, III.E. "Male members must be able to produce sperm but need alternative sperm collection technologies as they can no longer ejaculate in a way that allows for egg fertilization. Injured female members require ovarian function and a patent uterine cavity that would allow them to successfully carry a fetus even if unable to conceive naturally (e.g. through damage to their fallopian tubes)." *Id.* § III.D.

Section IV of the 2012 DoD Memo defines the extent of the benefits DoD provides. For example, DoD covers "a total of six [IVF] attempts to accomplish three completed IVF cycles," "[a]nesthesia or conscious sedation . . . for the oocyte retrieval and sperm aspiration," and "[s]torage of cryopreserved embryos for up to three (3) years." *Id.* at 2-3, §§ IV.B, IV.E, IV.H.

To date, DoD covers IVF services for ADSMs in accordance with the 2012 DoD Memo. Following a review of that policy, in December 2023, DoD determined that it would amend its policy to remove the categorical eligibility bar on those who are unmarried or require donor (*i.e.*, a non-spouse, third-party's) gametes. ECF No. 28 at 2. DoD is currently in the process of

6

determining the exact contours of the policy amendments, which it expects to finalize by the end of February 2024. *Id.* It will then begin the process of effectuating their implementation. *Id.*

### B. VA's IVF Benefits for Veterans under VHA

In 2017, the Continuing Appropriations and Military Construction, Veterans Affairs, and Related Agencies Appropriations Act authorized VA to use appropriated medical services funds to provide, for the first time, IVF services to certain veterans. Compl. ¶ 22 (citing Pub. L. No. 114-223, § 260, 130 Stat. 857, 897 (2017)). That authorization has been regularly renewed by Congress, including most recently in the Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, Div. J, Tit. II, § 234, 136 Stat. 4459 (2023) ("VA Appropriations Act" or "Section 234"). *Id.* ¶ 30; Compl. Ex. D (ECF No. 1-4).

The VA Appropriations Act, as in earlier years, provides that funds appropriated to VA "may be used to provide . . . fertility counseling and treatment using assisted reproductive technology to a covered veteran or the spouse of a covered veteran." Compl. Ex. D at 2, § 243(a)(1). The statute further defines a "covered veteran" to mean "a veteran . . . who has a service-connected disability that results in the inability of the veteran to procreate without the use of fertility treatment." *Id.* at 3, § 234(b)(2). Additionally, "assisted reproductive technology" ("ART") is defined in the Act as:

> benefits relating to reproductive assistance provided to a member of the Armed Forces who incurs a serious injury or illness on active duty pursuant to [10 U.S.C. §1074(c)(4)(A)], as described in the memorandum . . . "Policy for Assisted Reproductive Services for the Benefit of Seriously or Severely Ill/Injured (Category II or III) Active Duty Service Members" issued by the Assistant Secretary of Defense for Health Affairs on April 3, 2012 [*i.e.* the 2012 DoD Memo], and the guidance issued to implement such policy, including any limitations on the amount of such benefits available to such a member.

*Id.* § 234(b)(3).

After Congress authorized VA to cover certain IVF services, VA promulgated an Interim Final Rule, 82 Fed. Reg. 6273 (Jan. 19, 2017), which was finalized on March 7, 2019, 84 Fed. Reg. 8254; 38 C.F.R. § 17.380. Under the VA regulation, IVF benefits may be provided when clinically appropriate to a "veteran who has a service-connected disability that results in the inability of the veteran to procreate without the use of fertility treatment" and their spouse. 38 C.F.R. § 17.380(a)(1). "[S]ervice-connected disability" is further defined to mean "for a male veteran, a service-connected injury or illness that prevents the successful delivery of sperm to an egg; and, for a female veteran with ovarian function and a patent uterine cavity, a service-connected injury or illness that prevents the egg from being successfully fertilized by sperm." *Id.* § 17.380(a)(2). Moreover, the VA regulation provides that IVF treatment will be provided when clinically appropriate "to the same extent such treatment is provided to a member of the Armed Forces who incurs a serious injury or illness on active duty pursuant to 10 U.S.C. § 1074(c)(4)(A), as described in the [2012 DoD Memo]" and DoD implementing guidance. *Id.* § 17.380(a)(3).

VHA Directive 1334, "In Vitro Fertilization Counseling and Services Available to Certain Eligible Veterans and Their Spouses," dated March 12, 2021, memorializes VA's policy for the provision of IVF services to eligible veterans and their spouses. Compl. Ex. C at 1, § 1.a (ECF No. 1-3). It recognizes that "[S]ection 234(b)(3) defines 'assisted reproductive technology' as: assistance provided to a member of the Armed Forces who incurs a serious injury or illness . . . , as described in the [2012 DoD Memo]." *Id.* § 1.b. Because "the benefit is designed to allow the member and spouse to become biological parents through reproductive technologies where the Active Duty injury or illness has made it impossible to conceive naturally," *id.* at 3, § 2.g (citing 2012 DoD Memo), VA Directive 1334 "bars the use of donated sperm, oocytes, or embryos, or gestational surrogacy," *id.* § 2.h.

8

Like DoD, VA has been reviewing its IVF policy, and that process remains ongoing. ECF No. 28 at 2. Because the statutory authorities governing VA make DoD's impending policy change relevant to VA's IVF policy, and given VA's commitment to aiding veterans in starting families (subject to legal and fiscal restrictions), VA has determined that it will update its IVF policy to align the coverage it provides with that available under the forthcoming DoD IVF policy. *Id.*; ECF No. 33 at 4.

## II.    Factual Background

Plaintiff NOW-NYC is a membership organization whose stated "mission is to ignite change for the women and girls of New York through advancing legislation, promoting women in leadership, and challenging discrimination and violence against women." Compl. ¶ 12. Plaintiff filed this suit on August 2, 2023, against DoD and VA, challenging their IVF policies insofar as they require that "[v]eterans and service members seeking coverage of IVF treatments must" (1) "together with a spouse, be able to provide their own sperm and eggs and are prohibited from using gametes from third parties," *id.* ¶ 6 ("Gametes Condition"); (2) be lawfully married, *id.* ("Marriage Condition"); and (3) have a qualifying "'serious or severe' illness or injury from service" (for ADSMs) or a "service-connected" disability that results in infertility (for veterans), *id.* ¶ 7 ("SCD Condition"), (collectively, the "Eligibility Conditions").

Plaintiff alleges that these DoD and VA policies prevent "its military and veteran members . . . who are in same-sex or unmarried couples, are single, or whose infertility is not diagnosed or confirmed to be the result of military service" from obtaining IVF benefits in violation of the Affordable Care Act, the due process and equal protection clauses of the Fifth Amendment, and the Administrative Procedure Act. *Id.* ¶¶ 9, 10. NOW-NYC seeks a "declaratory judgment that the challenged [Eligibility Conditions] in Defendants' IVF policies . . . are unlawful" and an injunction

against "Defendants from enforcing the [Eligibility Conditions] in their IVF coverage policies." *Id.* at 25. As described above, both Agencies have reviewed and determined to substantially amend their policies in ways which are expected to moot or significantly narrow Plaintiff's challenges to the Gametes and Marriage Conditions. Defendants now move to dismiss Plaintiff's claims to the extent they are based on the SCD Condition.

## STANDARD OF REVIEW

On a Rule 12(b)(1) motion to dismiss, the party asserting subject-matter jurisdiction bears "the burden of proving by a preponderance of the evidence that it exists." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (citation omitted). The court "must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction," *id.*, "to determine whether the Pleading 'allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue,'" *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (alterations in original) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)). However, "argumentative inferences favorable to the party asserting jurisdiction should not be drawn." *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992).

When considering a motion to dismiss under 12(b)(6), a court must similarly "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) (citation omitted). The court may refer to "documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Tech., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (citations omitted). A complaint

must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

## ARGUMENT

## I.   Plaintiff Lacks Standing

To establish standing, Plaintiff must show that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision," *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Because "standing is not dispensed in gross[,] . . . a plaintiff must demonstrate standing for each claim [it] seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Ests., Inc.,* 581 U.S. 433, 439 (2017) (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)). An organizational plaintiff may establish standing in two ways. It may sue on "its own behalf 'to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy.'" *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 649 (2d Cir. 1998) (quoting *Warth v. Seldin*, 422 U.S. 490, 511 (1975)). An organization "may also assert the rights of its members under the doctrine of associational standing." *Id.* (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343–45 (1977)).

### A.   Plaintiff Lacks Organizational Standing

An organization has standing where it can establish "that it was directly injured as an organization." *Connecticut Parents Union v. Russell-Tucker*, 8 F.4th 167, 172 (2d Cir. 2021). Such a showing requires "an imminent injury in fact to itself as an organization (rather than to its

11

members) that is distinct and palpable." *Id.* at 172–73 (quoting *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 109 (2d Cir. 2017)). "[T]he challenged action" must do more than "merely harm [the organization's] 'abstract social interests.'" *Id.* at 173 (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). Rather, it must "perceptibly impair[]" the organization's activities by imposing "involuntary and material impacts on core activities by which the organizational mission has historically been carried out," *id.* at 173, 175 (emphasis omitted). *See also Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 (1976) ("organization's abstract concern with a subject that could be affected by an adjudication does not substitute for the concrete injury required by Art. III" (citation omitted)).

The Complaint does not establish the requisite injury in fact. NOW-NYC alleges only that the Eligibility Conditions "undermine[] NOW-NYC's mission," Compl. ¶ 66, and its "fight for reproductive justice and non-discrimination," *id.* ¶ 65. These alleged harms are no "more than simply a setback to the organization's abstract social interests." *Havens Realty Corp.*, 455 U.S. at 379; *see Connecticut Parents*, 8 F.4th at 173; *Simon*, 426 U.S. at 40. NOW-NYC has not alleged any "perceptible opportunity cost." *Connecticut Parents*, 8 F.4th at 173. For example, it does not allege that the Eligibility Conditions imposed on it any involuntary costs "in time, money, or danger," such as an "increased demand for [its] services" or the forced expenditure of funds "reasonably necessary to continue an established core activity of the organization." *Id.* at 173–74 (collecting cases). NOW-NYC thus lacks standing to sue on its own behalf.

### B. Plaintiff Lacks Associational Standing Because It Has Not Identified Any Member Whose Rights It Seeks to Vindicate

Because it has not established organizational standing, NOW-NYC must rely on associational standing to invoke the Court's jurisdiction. "To bring suit on behalf of its membership, the organization must demonstrate that (a) its members would otherwise have

standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Irish Lesbian & Gay Org.*, 143 F.3d at 649 (citation omitted). "Associational standing requires that a plaintiff identify *by name* at least one member with standing." *Do No Harm v. Pfizer Inc.*, 646 F. Supp. 3d 490, 501 (S.D.N.Y. 2022), *appeal docketed*, No. 23-15 (2d Cir. Jan. 4, 2023) (emphasis added) (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 498–99 (2009) (holding that "requirement of naming the affected members has never been dispensed with" unless "*all* the members of the organization are affected by the challenged activity")). *See also Pen Am. Ctr., Inc. v. Trump*, 448 F. Supp. 3d 309, 320–21 (S.D.N.Y. 2020) (holding that "[b]ecause the Complaint does not allege that the challenged conduct has affected all [of plaintiff's] members" plaintiff was "required to identify at least one affected member by name" (emphasis in original)); *Equal Vote Am. Corp. v. Cong.*, 397 F. Supp. 3d 503, 509 (S.D.N.Y. 2019), *aff'd in part, remanded in part sub nom. Liu v. United States Cong.*, 834 F. App'x 600 (2d Cir. 2020) ("to bring claims on behalf of its members under the 'associational standing' doctrine, an organizational plaintiff . . . must identify, by name, at least one member with standing").

Plaintiff has not identified by name any member that claims to have standing.[4] It has thus failed to carry its burden of establishing associational standing. The identification requirement is no mere technicality: "[A]bsent identified members, courts would face 'the difficulty of verifying the facts' upon which standing depends." *Do No Harm*, 646 F. Supp. 3d at 503 (quoting *Summers*, 555 U.S. at 499). That is the case here. Plaintiff has provided even *less* member information than

---

[4] NOW-NYC's pleading suggests that its membership is not restricted to service members and veterans, let alone those seeking IVF coverage. *See* Compl. ¶ 12. Accordingly, absent a plausible allegation that its membership is so limited, the exception to the identification requirement "where *all* the members of the organization are affected by the challenged activity" could not apply to NOW-NYC. *Summers*, 555 U.S. at 499 (emphasis in original).

in *Do No Harm*, where the plaintiff-organization at least submitted anonymized declarations from multiple members—which still did not satisfy the identification requirement. *See* 646 F. Supp. 3d at 502. NOW-NYC relies solely on allegations in its Complaint, which do not provide sufficient information to verify whether and which unidentified NOW-NYC members are harmed by which of the Eligibility Conditions. *See, e.g.*, Compl. ¶ 72 (alleging unidentified member had "service-connected disabilities" but also alleging that same member could not obtain IVF benefits from VHA due to, in part, not satisfying the SCD Condition); *id.* ¶ 73 (alleging some members are "single women" who "*may* also be ineligible due to the Service-Connection Requirement" (emphasis added)). Accordingly, Plaintiff has not established standing to bring suit on behalf of any of its members.

### C. Plaintiff Further Lacks Associational Standing to Challenge DoD's SCD Condition Because No Member is Alleged to Have Been Injured by It

To demonstrate that "its members would otherwise have standing to sue in their own right" for purposes of associational standing, a plaintiff must establish that its members suffered an injury in fact. *Irish Lesbian & Gay Org.*, 143 F.3d at 649. Thus, a plaintiff must show that a member suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Even if Plaintiff had properly identified the member(s) on whose behalf it sued, NOW-NYC would still lack standing to challenge DoD's SCD Condition because it has not established that any member was injured by that condition. *See Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012) ("*with respect to each asserted claim*, '[a] plaintiff must always have suffered a distinct and palpable injury'" (emphasis and alteration in original) (quoting *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 100 (1979)).

For a NOW-NYC member to be injured by DoD's SCD Condition, he or she would have to have been denied IVF coverage by DoD based on a lack of a service-connected injury or illness. Plaintiff does not allege that any NOW-NYC member was denied DoD IVF benefits on that basis. Plaintiff identifies in the Complaint a single unnamed NOW-NYC member who is an active-duty member of the military, and thus potentially eligible for DoD IVF benefits. *Compare* Compl. ¶ 68 (identifying active-duty member covered by DoD IVF benefits) *with id.* ¶¶ 69-73 (identifying veteran members covered by VHA). As alleged, that sole active-duty member's "IVF services will not be covered by their military healthcare due to the 2012 DoD . . . Memo's *Member Gamete Requirements.*" *Id.* ¶ 68 (emphasis added). Plaintiff therefore has not shown that any member was injured by DoD's SCD Condition. *See Irish Lesbian & Gay Org.*, 143 F.3d at 649; *Mahon*, 683 F.3d at 64.

### D. Plaintiff Further Lacks Associational Standing to Challenge the SCD Conditions Because This Court Cannot Redress the Alleged Injury

In addition to establishing injury in fact, for standing, a plaintiff must show that the injury is "likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. There must be a "non-speculative likelihood that the injury can be remedied by the requested relief." *Allco Fin. Ltd. v. Klee*, 861 F.3d 82, 95 (2d Cir. 2017) (quoting *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106–07 (2d Cir. 2008)). In particular, courts have repeatedly recognized that "a plaintiff's injury cannot be redressed by a court order when two independent government actions produce the same harm and only one is challenged." *Baz v. U.S. Dep't of Homeland Sec.*, No. 1:18-CV-01013 (CJN), 2019 WL 5102827, at *4 (D.D.C. Oct. 11, 2019). *See, e.g., Delta Const. Co. v. EPA*, 783 F.3d 1291, 1296 (D.C. Cir. 2015) (plaintiffs challenging EPA standards could not demonstrate "that a favorable decision . . . would redress" injury where rules at issue were issued by two federal agencies and plaintiffs "attack[ed] only EPA's portions of the

two rules").[5] This is because a "court cannot provide any meaningful relief" where, "regardless of the outcome of the plaintiff's challenge to the first [policy]," the "plaintiff will remain subject to the prohibition of the second law that has not been challenged." *"Q"-Lungian Enterprises, Inc. v. Town of Windsor Locks*, 272 F. Supp. 3d 289, 295 (D. Conn. 2017) (collecting cases).

Here, even if Plaintiff were successful in its challenge to the Agencies' SCD Conditions, separate, unchallenged statutory provisions prohibit funding IVF services for those who have not suffered a requisite service-connected disability. Section 234 states that VA may cover IVF services only for "a covered veteran or the spouse of a covered veteran," and defines "covered veteran" as one "who has a *service-connected disability* that results in the inability of the veteran to procreate without the use of fertility treatment." Compl. Ex. D at 2-3, § 234(a)(1), (b)(2) (emphasis added). DoD is similarly statutorily restricted in providing its IVF benefits "to members of the uniformed services who incur a serious injury or illness on active duty" and for the purpose of "assist[ing] in the reduction of the disabling effects of a qualifying condition." 10 U.S.C. §§ 1074(c)(4)(A), 1079(d)(1). Plaintiff does not challenge—or even mention in the Complaint— these independent statutory requirements that condition the Agencies' provision of IVF benefits on the existence of a SCD.[6] Nor does it seek any injunctive or declaratory relief as to these statutory provisions. *See* Compl. at 25. Because DoD and VA are each statutorily prohibited from providing

---

[5] *See also Daogaru v. U.S. Att'y Gen.*, 683 F. App'x 824, 826 (11th Cir. 2017) (ruling for plaintiff would not redress injury because state law prohibited same conduct proscribed by challenged federal statute); *Mercer Outdoor Advert., LLC v. City of Hermitage*, 605 F. App'x 130, 132 & n.2 (3d Cir. 2015) (no redressability where unchallenged requirements of sign ordinance would separately prevent relief sought as to challenged requirement) (collecting cases holding same from Fourth, Sixth, Seventh, Eighth, Ninth and Eleventh Circuits); *"Q"-Lungian Enterprises, Inc. v. Town of Windsor Locks*, 272 F. Supp. 3d 289, 295 (D. Conn. 2017) (a "rul[ing] for plaintiffs that the Town's zoning code violates the First Amendment . . . would not redress plaintiffs' injury" because "plaintiffs' proposed conduct would still have been illegal under" state regulation).

[6] To the extent the Complaint can be read to challenge the Appropriations Act, the relevant allegations target only the Act's purported requirement that VA's use of appropriated funds for IVF services comply with the conditions in the 2012 DoD Memo. *See* Compl. ¶¶ 22, 30; Compl. Ex. D at 2-3, § 234(a)(1), (b)(3).

IVF services to veterans who, *inter alia*, do not have a qualifying service-connected disability, the harms alleged by Plaintiff cannot be redressed by its challenge to the Agencies' SCD Conditions and the relief requested.[7]

## II.     The VJRA Divests the Court of Jurisdiction Over Plaintiff's Claims Against VA

The Veterans Judicial Review Act ("VJRA") precludes district court jurisdiction over Plaintiff's claims against VA. The VJRA states that VA "shall decide all questions of law and fact necessary to a decision . . . that affects the provision of benefits . . . to veterans," and that those decisions are "final and conclusive and may not be reviewed by any other official or by any court," except as otherwise provided. 38 U.S.C. § 511(a). Under the VJRA, when VA "makes a decision on the award of benefits," a veteran can seek further review of that decision only through the procedure set forth in the VJRA. *Larrabee by Jones v. Derwinski*, 968 F.2d 1497, 1501 (2d Cir. 1992) (citing 38 U.S.C. § 7105). Specifically, the VJRA provides that a veteran may appeal an adverse benefits determination to the Board of Veterans' Appeals ("Board"), and if necessary, to the Court of Veterans Appeals, "an Article I court established by the VJRA with 'exclusive jurisdiction' to review the decisions of the Board." *Id.* (citing 38 U.S.C. § 7252(a)). "Decisions of the Court of Veterans Appeals may then be appealed, but only to the Federal Circuit." *Id.* (citing 38 U.S.C. § 7292). Importantly, the VJRA states that, on appeal, the Federal Circuit "shall have exclusive jurisdiction to review and decide any challenge to the validity of any statute or regulation

---

[7] Indeed, if the Court found the SCD Conditions in the Agencies' IVF policies unlawful, VA and DoD would likely have to cease providing IVF services to veterans and service members *altogether*—including to any that are Plaintiff's members—because VA and DoD cannot expand the class of beneficiaries beyond those authorized by Congress. *See Texas v. EPA*, 726 F.3d 180, 199 (D.C. Cir. 2013) (no redressability where injury caused by federal law rather than challenged agency rule and vacatur of the rule would result in even broader prohibition on industry activity at issue). Further, the Court could not lawfully order the Agencies to expend funds in a manner not authorized by statute because it would intrude upon Congress's power of the purse. *See Off. of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 425 (1990) (Congress's power of the purse limits the "relief available in a judicial proceeding seeking payment of public funds" because "[a]ny exercise of a power granted by the Constitution to one of the other branches of Government is limited by a valid reservation of congressional control over funds in the Treasury.").

or any interpretation thereof . . . and to interpret constitutional and statutory provisions, to the extent presented and necessary to a decision." 38 U.S.C. § 7292(c). The Second Circuit has held that this review scheme "precludes federal courts from hearing claims—even if draped in constitutional terms—seeking a particular type or level of medical care." *Larrabee*, 968 F.2d at 1500; *see also id.* at 1501 (VJRA's "provisions amply evince Congress's intent to include all issues, even constitutional ones, necessary to a decision which affects benefits in [the VJRA's] exclusive appellate review scheme.").

Plaintiff's claims against VA "seek[] a particular type . . . of medical care"—IVF—and so the VJRA "precludes [the Court] from hearing [those] claims." *Id.* at 1500. Any effort by Plaintiff to rely on Second Circuit case law noting that the VJRA "does not" necessarily "deprive [district courts] of jurisdiction to hear facial challenges of legislation affecting veterans' benefits," *Disabled Am. Veterans v. U.S. Dep't of Veterans Affs.*, 962 F.2d 136, 140 (2d Cir. 1992), would be unavailing. The Second Circuit has not held that *any* facial constitutional challenge may be brought in district court. Rather, in *Disabled American Veterans*, the court found that "the district court had jurisdiction to consider" a facial challenge where the plaintiffs "neither ma[de] a claim for benefits nor challenge[d] the denial of such a claim." *Id.* at 141. And two years later, the Second Circuit cautioned that "courts do not acquire jurisdiction to hear challenges to benefits determinations merely because those challenges are cloaked in constitutional terms." *Sugrue v. Derwinski*, 26 F.3d 8, 11 (2d Cir. 1994). Plaintiff here "challenge[s] the denial of such a claim." *Disabled Am. Veterans*, 962 F.2d at 141; *see, e.g.*, Compl. ¶ 12 ("NOW-NYC's members include veterans and service members *denied IVF coverage* because of one or more of the [Eligibility Conditions]" (emphasis added)); *id.* ¶ 69 (alleging veteran "was denied IVF services because she"

did not satisfy the Marriage Condition). As such, Plaintiff cannot evade the exclusive review scheme Congress established in the VJRA, even if it casts such arguments as a facial challenge.[8]

Nor would it matter that some NOW-NYC members who wish to use IVF benefits have yet to request them from VA, and thus currently lack a denial to appeal. If those members' claims relate to an expected denial of benefits, they must file their benefit claims and then appeal a decision on those claims. *See Heckler v. Ringer*, 466 U.S. 602, 621–22 (1984) (plaintiff could not avoid statutory review scheme where he had not filed claim for "benefits" but sought to "establish a right to future payments should he ultimately decide to proceed with" medical care at issue; rather, he had to file a "concrete claim for" benefits and, if denied, appeal that decision). Plaintiff's members cannot sidestep the review scheme by abstaining from seeking IVF benefits and filing a pre-emptive "facial" challenge to the statute. *See id.* at 621 (parties cannot "bypass" review scheme "by simply bringing declaratory judgment actions in federal court before they" file benefits claims); *U.S. Commodity Futures Trading Comm'n v. Amaranth Advisors, LLC*, 523 F. Supp. 2d 328, 338 (S.D.N.Y. 2007) (plaintiff "cannot attempt an end-run around" statutory review scheme "by preemptively" raising a legal challenge "before [agency] issues a decision"). The Court thus lacks jurisdiction over Plaintiff's claims against VA.

### III. Plaintiff Fails to State a Substantive Due Process Claim Against the Agencies' SCD Conditions

Plaintiff claims that by failing to provide IVF benefits to *all* military service members and veterans, regardless of whether they have suffered a service-connected disability, DoD and VA have "impinge[d] on their fundamental right to procreate." Compl. ¶ 99. Plaintiff, in effect, argues that the government has an affirmative, constitutional duty to provide benefits that enable service

---

[8] Plaintiff does not raise an APA challenge to VA's IVF policy under 5 U.S.C. § 706(2)(A). A challenge to agency rulemaking would, in any event, also be subject to channeling under a different provision of the VJRA. *See* 38 U.S.C. § 502.

members and veterans to bear children. This argument, however, flouts clear Supreme Court precedent. "Although the liberty protected by the Due Process Clause affords protection against unwarranted government interference with freedom of choice in the context of certain personal decisions"—including the decision to conceive children—"it does not confer an entitlement to such funds as may be necessary to realize all the advantages of that freedom." *Harris v. McRae*, 448 U.S. 297, 317–18 (1980). "It cannot be that because government may not prohibit" people from procreating that "government, therefore, has an affirmative constitutional obligation to ensure that all persons have the financial resources to obtain" services necessary to conceive children. *Id.* at 318; *see also Rust v. Sullivan*, 500 U.S. 173, 201 (1991) ("The Government has no constitutional duty to subsidize an activity merely because the activity is constitutionally protected"). Accordingly, the Agencies' SCD Conditions do not implicate a fundamental right to procreate simply by denying IVF benefits to certain persons.[9]

Because the SCD Conditions do not "jeopardize[] [the] exercise of a fundamental right," those requirements need only "rationally further a legitimate state interest"; *i.e.*, "there [need only be] a plausible policy reason for" the requirements. *Nordlinger v. Hahn*, 505 U.S. 1, 10–11 (1992). A policy satisfies rational basis review "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313–14 (1993). A governmental policy "bear[s] a strong presumption of validity . . . and those attacking [its] rationality . . . have the burden to negative every conceivable basis which might support it." *Id.* at 314–15 (citations omitted). Further, rational basis review is especially deferential

---

[9] Indeed, Plaintiff's legal theory, if adopted, would create substantial practical concerns. For example, it could require the government to provide IVF benefits to *all* citizens, not just service members and veterans. By Plaintiff's logic, the failure to provide IVF benefits to any citizen could potentially inhibit them from conceiving and thus could "impinge on their fundamental right to procreate." Compl. ¶ 99. Further, it is unclear why Plaintiff's theory would be limited to *IVF* benefits. There are many services and products that could allegedly facilitate procreation, and under Plaintiff's theory, a party can claim a constitutional right to government funding of those services and products as well.

"where the legislature must . . . engage in a process of line-drawing" to identify "governmental beneficiaries" because that task "inevitably requires that some persons," even those who might "have an almost equally strong claim to favored treatment[,] be placed on different sides of the line." *Id.* at 315–16. Ultimately, "the fact [that] the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration." *Id.* At bottom, rational basis review "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Id.* at 313–14.

The SCD Conditions clear this low hurdle. After providing for primary health services to qualifying service members and veterans, Congress decided to provide certain extended benefits— which may be used for IVF services—to those with injuries or illnesses related to their service. An obvious, "reasonably conceivable" justification for privileging that category of people is that Congress concluded it was important to compensate their service by remedying their service-related injury or illness. This justification is especially sound in the context of expensive IVF benefits.[10] *See Schweiker v. Wilson*, 450 U.S. 221, 237 (1981) ("congressional desire to economize in the disbursement of federal funds" and thus "limit distribution of" certain benefits to particular groups is not "an irrational basis for withholding" those benefits from others). "Awarding this type of benefit[] inevitably involves the kind of line-drawing that will leave some  . . . outside the favored circle," and so Congress must "have discretion in deciding how to [allocate] necessarily limited resources" among potential beneficiaries. *Id.* at 238. The SCD Conditions are thus rational.

---

[10] *See, e.g.*, 159 Cong. Rec. S3611 (May 20, 2013) (statement by Senator Gillibrand) ("medical advancements, such as [IVF], have provided a solution for some would be parents," but "[i]t costs more than $12,000 for a couple to undergo one cycle of infertility treatment"); Reproductive Biology and Endocrinology Journal, National Institute of Health, National Library of Medicine (Aug. 4, 2022), https://perma.cc/DC8N-EVPX ("[The American Society for Reproductive Medicine] states that the average cost of an IVF cycle in the US is $12,400. However, other studies estimate the cost per cycle at approximately $20,000-$25,000."). The Court can take judicial notice of these sources. *See Rynasko v. New York Univ.*, 63 F.4th 186, 191 n.4 (2d Cir. 2023) ("When considering a motion made pursuant to Rule 12(b)(6)" a court "may take judicial notice of documents from official government websites").

In attempting to show that the SCD Conditions are irrational, Plaintiff first argues that the Agencies cover other non-IVF fertility services for all service members and veterans—such as fertility "diagnostic services"—regardless of whether the beneficiary suffered a qualifying service-connected disability. Compl. ¶¶ 43-44, 53-55, 104. But it is "reasonably conceivable" that the difference in coverage for various fertility services is justified based on the material differences in the nature of those services. Plaintiff does not establish that either DoD or VA fully covers, for all service members and veterans, a fertility treatment that is identical (or even substantially similar) to IVF in all relevant respects (including cost). That is critical since, under the rational basis test, "[t]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it." *Heller v. Doe by Doe*, 509 U.S. 312, 320–21 (1993). And regardless, even if DoD or VA did fully cover some other service that is entirely analogous to IVF, that alone would not render the agency's SCD Condition irrational. Benefits legislation, "by its very nature, involves drawing lines," including "lines that necessarily" seem "arbitrary." *Califano v. Aznavorian*, 439 U.S. 170, 174 (1978). If parties want those lines to change, they must rely on "the democratic process," not "judicial intervention." *Beach Commc'ns, Inc.*, 508 U.S. at 313–14.

Plaintiff next notes that certain health insurance policies for federal employees provide IVF benefits and that the failure to provide IVF benefits to all service members and veterans is therefore irrational. *See* Compl. ¶¶ 49, 105. But even assuming federal employee health insurance policies were a valid comparator for military and veteran health benefits programs, Plaintiff does not allege that all of those policies provide the same type of IVF benefits that Plaintiff wants DoD and VA to provide: comprehensive IVF coverage for all beneficiaries. To the contrary, Plaintiff alleges only that federal employee health insurance policies "provide coverage for all IVF services in states that require all insurers to include such coverage . . . including New York." *Id*. ¶ 49.

Regardless, Plaintiff is comparing drastically different health benefit systems, which understandably provide different benefits. Federal employee health insurance policies are provided through private companies, and their coverage is based on extensive negotiations between those companies and the Office of Personnel and Management ("OPM"). *See*, *e.g.*, 5 C.F.R. § 890.203(a)(2) (private insurance companies may submit "benefit and rate proposals to OPM . . . in order to be considered for participation in" the FEHB and "OPM may make counter-proposals at any time"). By contrast, the TRICARE program and VHA are federally administered healthcare programs, wherein coverage is not provided through private insurers and services may be delivered directly at military or VA facilities. *See, e.g.*, 32 C.F.R. § 199.17(a); 32 C.F.R. §199.1(d); 38 C.F.R. §§ 17.36, 17.38; Benefits.gov, *Basic Medical Benefits Package for Veterans*, https://perma.cc/86CW-NJ3Q (last accessed Jan. 26, 2024); VA, *Eligibility for community care outside VA*, https://perma.cc/ZTN8-YAHN (last accessed Jan. 26, 2024). Further, healthcare through DoD and VA is heavily subsidized, while federal employees generally pay a more significant portion of their health insurance premiums. *See*, *e.g.*, 5 C.F.R. § 890.502(a); 10 U.S.C. § 1073d; 38 U.S.C. § 1710. It is at minimum "reasonably conceivable" that the differences in coverage between federal employee health insurance policies and military health programs are properly attributable to the differences in how each is formed, funded, and administered. *Beach Commc'ns, Inc.*, 508 U.S. at 313–14. Plaintiff thus fails to overcome the "strong presumption of constitutionality" that applies "to legislation conferring monetary benefits." *Schweiker*, 450 U.S. at 238.

IV.    **Plaintiff Fails to State an Arbitrary and Capricious Claim under the APA Against DoD's SCD Condition**

Finally, Plaintiff claims that DoD's SCD Condition is arbitrary and capricious, and thus unlawful under the APA, because DoD allegedly offered no "adequate justification" for it. *See*

Compl. ¶ 116; *see also id.* ¶¶ 120-21 (alleging that DoD's SCD Condition is irrational). However, arbitrary-and-capricious review does not apply here because DoD did not adopt the SCD Condition in an exercise of its policymaking discretion; rather, the relevant statute *required* DoD to include the SCD Condition in its IVF policy.

When a plaintiff brings an arbitrary-and-capricious claim, a court generally reviews "the agency's rationale and decisionmaking process." *Catskill Mountains Chapter of Trout Unlimited, Inc. v. EPA*, 846 F.3d 492, 521 (2d Cir. 2017). That type of "standard 'arbitrary [and] capricious' review," however, is a "more apt analytic framework" when dealing with an agency's "*policy*" judgment rather than an agency's "interpretation of . . . statutory language." *Judulang v. Holder*, 565 U.S. 42, 52 n.7 (2011) (emphasis added); *see also Catskill Mountains*, 846 F.3d at 523 ("the full-fledged [*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29 (1983) arbitrary-and-capricious] standard may not apply to rules that set forth for the first time an agency's interpretation of a particular statutory provision"); *Cont'l Air Lines, Inc. v. Dep't of Transp.*, 843 F.2d 1444, 1452 (D.C. Cir. 1988) ("[I]nterpreting a statute is quite a different enterprise than policymaking," and "[f]undamental differences under the APA turn on that distinction" since "much of the 'arbitrary and capricious' style analysis concerned with reasoned agency decisionmaking . . . cannot be applied directly to the question of whether an agency's interpretation of a statute is" incorrect.). When an agency claims that its decision is required by statute, a court merely asks whether the "agency's interpretation of [the] statutory provision" at issue "is reasonable." *Catskill Mountains*, 846 F.3d at 521; *see also Nat'l Ass'n of Regul. Util. Comm'rs v. ICC*, 41 F.3d 721, 727 (D.C. Cir. 1994) (where "statute is quite specific . . . the question is more obviously whether the agency permissibly interpreted the statute.").

Here, DoD's SCD Condition is based on the statute DoD relied upon to provide IVF benefits: section 1074(c)(4). That provision allows DoD to provide certain extended health benefits "to members of the uniformed services *who incur a serious injury or illness on active duty as defined by regulations prescribed by the Secretary*." 10 U.S.C. § 1074(c)(4)(A) (emphasis added); *see also id*. § 1079(d)(1) (this provision is incorporated in section 1074(c)(4)(A), and allows for benefits "to assist in the reduction of the disabling effects of a qualifying condition"). Thus, although Plaintiff "frames [its] challenge in terms of the 'arbitrary' or 'capricious' standard," the Court need only "consider the statutory language and . . . the reasonableness of [DoD's] interpretation of it." *Hong v. U.S. Sec. & Exch. Comm'n*, 41 F.4th 83, 94 n.12 (2d Cir. 2022), *cert. denied sub nom. Hong v. Sec. & Exch. Comm'n*, 143 S. Ct. 450 (2022). Plaintiff does not even claim that DoD misinterpreted section 1074(c)(4)—and such a claim would fail in any event, given that the SCD Condition in the 2012 DoD Memo is consistent with the statutory language—and so its APA claim should be dismissed insofar as it applies to DoD's SCD Condition.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant the Motion to Dismiss and dismiss this case for lack of jurisdiction or, in the alternative, dismiss Plaintiff's challenge to the SCD Condition for failure to state a claim.

Dated: January 26, 2024

     Respectfully submitted,

| | |
|---|---|
| BRYAN M. BOYNTON<br>Principal Deputy Assistant Attorney<br>General | DAMIAN WILLIAMS<br>United States Attorney for the<br>Southern District of New York |
| JULIE STRAUS HARRIS<br>Assistant Branch Director | By:   */s/ Tomoko Onozawa*<br>TOMOKO ONOZAWA<br>Assistant United States Attorney |
| By:   */s/ Laura B. Bakst*<br>LAURA B. BAKST<br>KUNTAL CHOLERA<br>1100 L Street, NW<br>Washington, DC 20005<br>Phone: (202) 514-3183<br>E-mail: laura.b.bakst@usdoj.gov<br>     kuntal.cholera@usdoj.gov | 86 Chambers Street, 3rd Floor<br>New York, New York 10007<br>Phone: (212) 637-2721<br>E-mail: tomoko.onozawa@usdoj.gov |