# The Jerome N. Frank Legal Services Organization

YALE LAW SCHOOL



```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  3/4/2024
```

**MEMO ENDORSED**

March 4, 2024

**VIA ECF**
**The Honorable Valerie E. Caproni**
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

Re:   *NOW-NYC v. U.S. Dept. of Def.* et al., No. 23-CV-6750 (VEC)

Dear Judge Caproni,

     Plaintiff National Organization for Women, New York City ("NOW-NYC") writes to oppose the request of Defendants U.S. Department of Defense ("DoD") and U.S. Department of Veterans Affairs ("VA") to "expand" the substantive scope of this Court's stay "until April 15," so that Defendants' forthcoming motion to dismiss, due March 8, need not address certain aspects of Plaintiff's claims regarding the Infertility Causation Requirement. ECF Nos. 44, 39.

     Defendants' request appears to be prompted by the failure to honor their repeated representations that DoD would finalize its new policies by the end of February. ECF No. 28 ("DoD . . . expects to finalize and share with Plaintiff a signed memorandum by the end of February 2024 that formally directs the changes and provides further details on their scope"); ECF No. 33 (same); ECF No. 36 ("DoD is currently in the process of determining the exact contours of the policy amendments, which it expects to finalize by the end of February 2024"). Defendants' counsel now represents that DoD will issue its new policy on March 8, 2024, and that VA will align its policies to those of DoD. Accordingly, by email dated February 29, Plaintiff's counsel offered to consent to a limited delay "until the new policies are issued and we have had a chance to review them." Email from Grace Sullivan, Yale L. Sch. Legal Intern, to Laura Bakst, Dep't of Just. Trial Att'y (Feb. 29, 2024). Rather than agree to a brief extension of its March 8 deadline on consent, however, which would afford Plaintiff time to review the policies now promised on that date, or to share draft policies prior to their public release on March 8, Defendants request a delay until April 15. Such a request is unwarranted.

     Instead, Plaintiff requests that this Court simply continue the deadline for Defendants' answer by one week, **to March 15, 2024** (and adjust subsequent briefing deadlines by one week as well), based on government counsel's statement that the new DoD policy will issue on **March 8** and that VA's policy will align with DoD's. If Defendants' new policies appear to resolve Plaintiff's claims regarding the definition of infertility, Plaintiff will advise government counsel by **March 12** that it has no objection to extending the stay to April 15. If, on the other hand, the policies do *not* resolve Plaintiff's claims as to the agencies' discriminatory definitions of infertility, then the Court will receive comprehensive briefing of all outstanding issues in one motion filed on **March 15**. This plan obviates the twin risks of delay and piecemeal litigation.

By way of background, on February 28, counsel for Defendants requested Plaintiff's position on an extension of the current stay to cover "any new claims based on the 'infertility' requirement." Email from Laura Bakst, Dep't of Just. Trial Att'y, to Grace Sullivan, Yale L. Sch. Legal Intern (Feb. 28, 2024). Counsel made no mention that the policies would be delayed by over a week. Plaintiff responded the same day that "[b]efore providing our position, we will need to see the revised policies. You represented to the court that you expected the policies would be finalized by the end of February, which is tomorrow. After we review the new policies, we can discuss a further stay, if any." Email from Grace Sullivan, Yale L. Sch. Legal Intern, to Laura Bakst, Dep't of Just. Trial Att'y (Feb. 28, 2024). On February 29, however, counsel for Defendants informed Plaintiff for the first time that DoD will reveal its new policy on March 8, the same day as its response to Plaintiff's amended complaint is due. In the meantime, Defendants could only represent that they "expect[ed] that the amended policies would clear up any confusion" as to the infertility claims. Email from Laura Bakst, Dep't of Just. Trial Att'y, to Grace Sullivan, Yale L. Sch. Legal Intern (Feb. 29, 2024). On March 3, Plaintiff offered that Defendant share the draft policy language as a confidential communication for review before the motion to dismiss deadline, but on March 4 Defendants declined. Now, nearly six months after Defendants first represented to Plaintiffs that they would soon amend their IVF policies, and absent any confirmed policy changes, Defendants ask the Court to further delay full litigation of Plaintiff's claims.

There is a danger of piecemeal litigation if the Court grants the "expanded" stay. This is because if DoD is incorrect that the "claims pertaining to the purported Coital Condition will be altered, if not mooted entirely, by the expected forthcoming policy changes," ECF No. 44, then Defendants will brief some claims beginning on March 8 and the infertility definition claims after April 15. Plaintiff's proposal is simpler and fairer: allow Plaintiff to review DoD's new policies after their delayed issuance on March 8; inform the government by March 12 whether the infertility definition claims are likely moot such that they can be stayed until April 15; and if not, ensure full briefing of all outstanding claims beginning March 15.

Granting a stay before Plaintiff has had a chance to review the new policy also risks unnecessary confusion, as Defendants have not specified which claims their proposed stay implicates or precisely how their updated policies will affect said claims. Defendants propose staying a nebulous set of claims relating to Defendants' discriminatory definitions of "infertility," which—contrary to Defendants' allegations—include those Plaintiff has made from the outset of this case. *See* ECF No. 1 at ¶ 29 (defining VA's discriminatory definition of infertility); *Id.* at ¶ 106 (alleging that Defendants' irrational definition of infertility violates the Due Process Clause of the Fifth Amendment); *Id.* at ¶ 97 (alleging that Defendants' discriminatory definition of infertility violates NOW-NYC member's fundamental right to procreate). Because Defendants were on notice about the discriminatory aspects of their definitions of infertility, they could have requested this stay when they requested a stay of claims relating to the Member Gamete and Marriage Requirements. *See* ECF No. 28.

Additionally, Defendants leave ambiguous to what extent their revised policies will substantively change the infertility requirements imposed on service members and veterans. They appear to both anticipate substantive changes and defend elements of the policies as they stand. For example, Defendants claim that their definition of "infertility," which currently requires service members or veterans to show a lost ability to reproduce coitally, "directly implicate[s] the Agencies' anticipated policy changes." ECF No. 44. At the same time, Defendants devote substantial space to rebutting Plaintiff's argument that their fertility requirements currently exclude same-sex couples and

single individuals, emphasizing that they "disagree with Plaintiff's characterization of the infertility requirements in their [unamended] IVF Policies."[1] *See* ECF No. 44 at ¶ 5. If Defendants indeed plan to revise their policies relating to "infertility," then their emphasis on the current policy is misplaced. Considering Defendants' contradictory contentions, Plaintiff needs to review the updated policies before assuming that they will resolve all its concerns about the infertility requirements.

In summary, Plaintiff respectfully requests that the Court grant a one-week extension of the Defendants' March 8 deadline to answer or otherwise move, up to and including March 15. DoD will issue its new policy on March 8; Plaintiff will advise the government no later than March 12 whether the new policy resolves its claims against the infertility definitions. If so, Plaintiff will consent to stay litigation of those claims to April 15; if not, Defendants' motion to dismiss will address all outstanding issues in the case.

We thank the Court for its consideration of this request.

Respectfully submitted,

By: */s/ Michael J. Wishnie*
Natalie Geismar, Law Student Intern
K.N. McCleary, Law Student Intern
Renée Mihail, Law Student Intern
Mira Ortegon, Law Student Intern
Briana Thompson, Law Student Intern
Natalia Friedlander, *Pro hac vice*
Michael J. Wishnie, MW1952
Veterans Legal Services Clinic
Yale Law School
P.O. Box 209090
New Haven, CT 06520-9090
(203) 432-4800
michael.wishnie@ylsclinics.org

*/s/ Priscilla J. Smith*
Donovan Bendana, Law Student Intern
Rosemary Coskrey, Law Student Intern
Trudel Pare, Law Student Intern
Grace Sullivan, Law Student Intern
Priscilla J. Smith, PS6961
Reproductive Rights and Justice Project
Information Society Project
Yale Law School
319 Sterling Pl.
Brooklyn, NY 11238
(347) 262-5177
priscilla.smith@ylsclinics.org

cc: Tomoko Onozawa, Counsel for Defendants (via ECF)

---

[1] Defendants' argument that the Amended Complaint does not accurately reflect their current definitions of infertility is irrelevant to whether certain claims should be stayed pending the release of the new policies. Nevertheless, the Amended Complaint accurately reflects the text of Defendant's current policies as outlined in public agency guidance, including the 2012 DoD Policy Memo, the Assisted Reproductive Services Webpage of the TRICARE website, and VHA Directive 1334. DoD defines infertility as lost "ability to reproduce coitally." Am. Compl. ¶ 25. VA defines infertility as "the inability to achieve a pregnancy after one year of regular unprotected sexual intercourse with their lawful spouse." Am. Compl. ¶ 87 (quoting ECF No. 40- 4 at 5, § 3(j)). This plain language facially excludes LGBT+ families and single people. Such facial exclusion is unacceptable even if, as Defendants argue, other pathways to an infertility diagnosis may be available in practice. *See* ECF No. 44 at ¶ 5. If DoD's revised policies update these definitions to bring them in line with more inclusive prevailing medical standards and ensure equitable IVF access for LGBT+ and single veterans and service members, then Plaintiff will consent to appropriate measures to limit the scope of litigation.

Upon consideration of Defendants' letter motion at Dkt. 44 and Plaintiff's response, it is ordered that Defendants' deadline to answer or otherwise respond to the Amended Complaint is extended from Friday, March 8, 2024, to **Friday, March 15, 2024**. The parties must meet and confer and inform the Court, via joint letter filed on ECF by **9:00 A.M. on Wednesday, March 13, 2024**, whether the parties consent to expanding the scope of the stay or whether Defendants will respond to all currently unstayed claims. If Defendants move to dismiss the Amended Complaint, Plaintiff's deadline to respond is extended from Friday, April 5, 2024, to **Friday, April 12, 2024**, and Defendants' deadline to reply is extended from Friday, April 19, 2024, to **Friday, April 26, 2024**.

It is further ordered that Defendants' previous motion to dismiss, Dkt. 35, and motion to stay discovery, Dkt. 38, are denied as moot given Plaintiff's Amended Complaint.

The Clerk of Court is respectfully directed to terminate the open motions at Dkts. 35, 38, and 44.

SO ORDERED.

*[Signature: Valerie Caproni]*   3/4/2024

HON. VALERIE CAPRONI
UNITED STATES DISTRICT JUDGE