```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _10/31/24___
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

NATIONAL ORGANIZATION FOR WOMEN-     :
NEW YORK CITY,                        :
                                     :
                                     :
                         Plaintiff,  :
                                     :
        -against-                    :        23-CV-6750 (VEC)
                                     :
                                     :        OPINION AND ORDER
UNITED STATES DEPARTMENT OF          :
DEFENSE, and UNITED STATES           :
DEPARTMENT OF VETERANS AFFAIRS,      :
                                     :
                                     :
                        Defendants.  :

-------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

Plaintiff National Organization of Women-New York City ("NOW")[1] sued the United

States Department of Defense ("DoD") and the United States Department of Veterans Affairs

("VA") alleging that their policies for covering in vitro fertilization ("IVF") violate the Fifth

Amendment of the Constitution, the Affordable Care Act ("ACA"), and the Administrative

Procedure Act ("APA"). Since NOW commenced this lawsuit, DoD and the VA have amended

their IVF polices, and the parties agreed to stay certain claims that may be mooted by those

amendments. What remains is a challenge to the requirement that service members and veterans

show that their need for IVF to procreate is, in some way, connected to their military service (the

"Service Connection Requirement").[2] DoD and the VA moved to dismiss the claims challenging

---

[1]     The Court acknowledges and appreciates the excellent advocacy of the Law Student Interns from Yale Law
School's Veterans Legal Services Clinic, Reproductive Rights and Justice Project, and Information Society Project
in their representation of NOW in this litigation.

[2]     DoD and the VA define the Service Connection Requirement differently. The Court defines the specific
contours of each requirement in more detail below but uses the term "Service Connection Requirement" to refer to
the requirement under both policies, unless otherwise noted.

the Service Connection Requirement for lack of jurisdiction and failure to state a claim.  For the reasons discussed below, Defendant's motion is GRANTED.

## BACKGROUND[3]

DoD and the VA provide healthcare coverage for active-duty service members and veterans, respectively.  Am. Compl., Dkt. 40, ¶¶ 4, 28.  Both agencies provide some coverage for assisted reproductive technology ("ART"), including IVF, egg freezing, fertility medications, and intrauterine insemination ("IUI").  *Id.* ¶¶ 4, 32, 45, Exs. A, C.  Coverage of IVF is subject to restrictions.  As most relevant here, DoD requires that the service member have a serious illness or injury sustained during active duty, and the VA requires that the veteran have a disability connected to his or her military service that creates a need for ART to procreate.  *See id.* Exs. A, C.

DoD's Policies

Service members are eligible for healthcare benefits through DoD's TRICARE program.  Am. Compl. ¶ 28; 10 U.S.C. § 1072(7).  Congress authorized DoD to provide two types of healthcare coverage.  First, DoD may provide TRICARE Prime benefits for health services necessary to prevent, diagnose, or treat an underlying medical condition.  10 U.S.C. § 1074(c)(1)-(2); *see also id.* § 1079(a)(12) (private sector component of TRICARE Prime covers only services that are "medically or psychologically necessary to prevent, diagnose, or treat a mental or physical illness, injury, or bodily malfunction").  Second, DoD may provide "extended benefits" that do not treat an underlying condition but that reduce the "disabling effects" of a condition.  *Id.* § 1079(d)(1).  Extended benefits are, however, available only to service members who suffered a "serious injury or illness" while on active duty.  *Id.*

---

[3]    The Court draws the background facts from (1) the Amended Complaint, Dkt. 40, assuming the truth of all well-pleaded allegations, and (2) the relevant statutory and regulatory framework.

§ 1074(c)(4)(A).  The Defense Secretary defined "serious injury or illness" to include Category

II and Category III conditions.  DoD Directive 1300.24 at 14 (2009).  A Category II condition is

"a serious injury or illness" as a result of which the service member is "unlikely to return to duty

within a time specified by his or her Military Department" and "[m]ay be medically separated

from the military."  *Id.*  A Category III condition is "a severe or catastrophic injury or illness" as

a result of which the service member is "highly unlikely to return to duty" and "[w]ill most likely

be medically separated from the military."  *Id.*

In 2010, DoD authorized coverage for IVF.  "Policy for Provision of In Vitro

Fertilization Services for the Benefit of Seriously Injured Service Members" ("2010 DoD

Memo"); Def. Mem., Ex. 1, Dkt. 52-1.  The 2010 DoD Memo relies on Section 1074(c) — the

statute authorizing "extended benefits" coverage for members of the military — as the legal basis

for coverage of IVF.[4]  *See id.*

DoD implemented its IVF policy in 2012.  Policy for Assisted Reproductive Services for

the Benefit of Seriously or Severely Ill/Injured (Category II or III) Active Duty Service Members

("2012 DoD Memo"); Am. Compl. ¶ 32, Ex. A.  The 2012 DoD Memo defined DoD's Service

Connection Requirement as follows: IVF benefits were available "to service members, regardless

of gender, who have sustained serious or severe illness/injury," *i.e.*, a Category II or III illness or

injury, "while on active duty that led to the loss of their natural procreative ability."  *Id.* Ex. A at

1, §§ II, III.A.  The 2012 DoD Memo limited IVF coverage to married couples who could

---

[4]     The statutory scheme is convoluted.  DoD is authorized by § 1074(c)(1)-(2) to provide health services to prevent, diagnose, or treat an underlying medical condition of a member of the military.  It can also provide "extended benefits" to "eligible dependents."  "Extended benefits" do not treat an underlying condition but do reduce the "disabling effects" of the condition.  10 U.S.C. § 1079(d)(1).  Finally, if the member of the military has suffered "a serious injury or illness" while on active duty, section 1074(c)(4)(A) allows DoD to provide extended benefits to the member of the military (*i.e.*, benefits that do not "treat" the condition but do reduce its disabling effects).

3

provide their own egg and sperm, meaning that no unmarried or same-sex couples were covered. *Id.* at 2, §§ III.C, III.D, III.E.

In December 2023, DoD decided to amend the 2012 DoD Memo to allow coverage for unmarried service members and those who require donor gametes. It did so in an amended policy dated March 8, 2024 (the "2024 DoD Memo"). Letter, Ex. A., Dkt. 49-1. The 2024 DoD Memo permits "[u]se of donated third-party gametes or embryos . . . when provided at the qualifying Service member's expense." *Id.* at 3, § III.C. It also permits coverage for certain IVF services that are "rendered to a qualifying Service member's lawful spouse, unmarried partner, or a third-party gestational carrier" where such person is covered by TRICARE. *Id.* § III.D.

The 2024 DoD Memo retained the Service Connection Requirement. Service members must show that they have a Category II or III injury or illness caused by their active-duty service that interferes with their ability to procreate naturally to qualify for IVF coverage. *Id.* at 5, § V.A. That said, service members need not "demonstrate that they have tried, or intend to try, to procreate with a member of the opposite sex to establish that there has been a loss of their ability to procreate without the use of ART." *Id.* at 2, § III.A.

The VA's Policies

Veterans are eligible for healthcare benefits through the Veterans Health Administration ("VHA"). Am. Compl. ¶ 28. In 2017, Congress authorized the VA, through the VHA, to provide coverage for IVF services to certain veterans. *See id.* ¶ 41 (citing Pub. L. No 114-223, § 260, 130 Stat. 857, 897 (2017)). Congress renewed that authorization in 2023 and again in 2024 with the same authorizing language. *See* Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, Div. J, Tit. II, § 234, 136 Stat. 4459 (2023) ("VA Appropriations Act" or "Section 234"); Am. Compl. ¶ 47, Ex. D; Def. Mem., Dkt. 52, at 7 n.3. The VA Appropriations Act, as in earlier years, provides that funds appropriated to the VA "may be used to provide . . . fertility

counseling and treatment using assisted reproductive technology to a covered veteran or the spouse of a covered veteran." Am. Compl. Ex. D at 2, § 234(a). The statute further defines a "covered veteran" as "a veteran . . . who has a service-connected disability that results in the inability of the veteran to procreate without the use of fertility treatment." *Id*. at 3, § 234(b)(2).

After Congress authorized the VA to cover certain IVF services, the VA adopted a regulation[5] that, *inter alia*, defines the VA's Service Connection Requirement as follows: IVF benefits may be provided when clinically appropriate to a "veteran who has a service-connected disability that results in the inability of the veteran to procreate without the use of fertility treatment." 38 C.F.R. § 17.380(a)(1)(i). "[S]ervice-connected disability" is further defined to mean, "for a male veteran, a service-connected injury or illness that prevents the successful delivery of sperm to an egg; and, for a female veteran with ovarian function and a patent uterine cavity, a service-connected injury or illness that prevents the egg from being successfully fertilized by sperm." *Id.* § 17.380(a)(2).

In 2021, the VHA limited certain access to IVF services. VHA Directive 1334, "In Vitro Fertilization Counseling and Services Available to Certain Eligible Veterans and Their Spouses," dated March 12, 2021 (the "2021 VA Directive"); Am. Compl. Ex. C. The VA said that because "the benefit is designed to allow the member and spouse to become biological parents through reproductive technologies where the Active Duty injury or illness has made it impossible to conceive naturally," *id.* at 3, § 2.g (citing 2012 DoD Memo), VA Directive 1334, the VA "bars the use of donated sperm, oocytes, or embryos, or gestational surrogacy," *id*. § 2.h.

In January 2024, the VA determined that it would change its IVF policy. In a press release dated March 11, 2024, the VA announced that it will cover IVF treatment for "qualifying

---

[5]    The VA first published an Interim Final Rule in 2017, 82 Fed. Reg. 6273 (Jan. 19, 2017); the rule was finalized on March 7, 2019, 84 Fed. Reg. 8254; 38 C.F.R. § 17.380.

Veterans regardless of marital status and . . . allow the use of donor eggs, sperm, and embryos." VA.gov, *VA Expands In Vitro Fertilization for Veterans*, https://perma.cc/SHG3-UG4K. The VA published its new policy in the Federal Register. *See* 89 Fed. Reg. 23,518 (Apr. 4, 2024) ("2024 VA Policy"). The new policy continues to require veterans to have a service-connected disability to be entitled to coverage. *See id.* at 23,519 (explaining that the policy change "does not eliminate the statutorily imposed requirement that a veteran must have a service-connected disability that results in the inability of the veteran to procreate without the use of fertility treatment").[6]

<u>NOW's Members</u>

The Amended Complaint alleges that service members and veterans who have been harmed by the Service Connection Requirement of DoD and the VA are members of NOW. Am. Compl. ¶¶ 65–76. It makes specific allegations about a few members; some of the purportedly harmed NOW members are named and others are not.

First, the Amended Complaint alleges that a member of NOW is a female active-duty military service member who wants to have a child with her wife. *Id.* ¶ 66. The couple underwent several rounds of IUI that failed, and the only remaining medically-indicated procedure is IVF. *Id.* This member does not have a Category II or III illness so the Service Connection Requirement prevents her from receiving coverage for IVF. *Id.* This member is not named in the Amended Complaint.

---

[6]     The VA rates veterans' disability from 0 to 100%. *Id.* Veterans with a disability rating over 50% can access all care through the VA (without a service-connection requirement) except for dental, emergency care, and IVF. 38 U.S.C. § 1710(a)(1); *see also* 38 C.F.R. §§ 17.36–17.38. Veterans with a disability rating of 100% can access all care except IVF through the VA, including dental and emergency care, without a service-connection requirement. 38 C.F.R. § 4.16; *id.* § 1712(a)(1)(G); *id.* § 1728(a)(3). *See* Am. Compl. ¶ 57 (IVF coverage is the only VA health treatment subject to a service-connected condition, even for veterans with a total disability rating).

The Amended Complaint also alleges that two members of NOW are a male active-duty Air Force officer and his wife, who is a civilian TRICARE beneficiary. *Id.* ¶ 67. They underwent four failed rounds of IUI and two failed embryo transfers through IVF. *Id.* Their third embryo transfer through IVF was successful, and the woman is currently pregnant. *Id.* ¶ 68. TRICARE has not covered any of their IVF treatments because the couple was diagnosed with "unexplained infertility" and cannot show that the infertility was caused by the service member's Category II or III illness. *Id.* ¶¶ 67–68. These members are not named in the Amended Complaint.

The Amended Complaint alleges that Amber Bohlman is a Marine Corps veteran who cannot demonstrate that her infertility is service connected. It also alleges that Lindsay Church is a nonbinary Navy veteran who has a service-connected disability but has been told that the disability is not a direct cause of the infertility and, therefore, does not satisfy the VA's Service Connection Requirement. *Id.* ¶¶ 71–72. Bohlman and Church are members of NOW. *Id.*

Finally, Plaintiff alleged that one of its members is a Navy veteran who was unable to prove that she satisfied the Service Connection Requirement, so she paid out of pocket for two cycles of IVF. *Id.* ¶ 73. This member is not named in the Amended Complaint.

<u>Procedural History</u>

Plaintiff filed its initial complaint on August 2, 2023. Compl., Dkt. 1. On January 26, 2024, Defendants moved to dismiss. *See* Mot., Dkt. 35. Plaintiff responded by amending the complaint. *See* Am. Compl., Dkt. 40. The Amended Complaint challenges the Service Connection Requirement, as described above, as well as other aspects of DoD's and the VA's

policies; all claims other than the Service Connection Requirement have been stayed (the "Stayed Claims").[7]

Meanwhile, DoD and the VA have changed certain of their IVF coverage policies. *See* 2024 DoD Memo; 2024 VA Policy. Defendants argue that their policy changes moot the Stayed Claims. *See* Letters, Dkts. 44, 49, 55. To give Plaintiff time to determine whether voluntary dismissal of the Stayed Claims is appropriate, the Court stayed Defendants' deadline to answer those claims until fourteen days after the Court resolves this motion to dismiss the unstayed claims. Order, Dkt. 56.

DoD and the VA moved to dismiss the Amended Complaint to the extent it challenges the Service Connection Requirement for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6). Mot., Dkt. 51. The motion was fully briefed as of May 13, 2024, *see* Mem., Dkts. 57, 71, and the Court held oral argument on May 30, 2024, *see* Tr., Dkt. 73.

## DISCUSSION

### I.   Motion to Dismiss Standard

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Lyons v. Litton Loan Servicing LP*, 158 F. Supp. 3d 211, 218 (S.D.N.Y. 2016) (citation omitted). In resolving a Rule 12(b)(1) motion, the Court may consider evidence outside of the pleading to

---

[7]    The Stayed Claims challenge: (1) the requirement that the service member or veteran seeking IVF coverage must, together with a spouse, be able to provide their own sperm and egg (the "Member Gamete Requirement"); (2) the policies limiting coverage of IVF to service members and veterans who are lawfully married (the "Marriage Requirement"); and (3) defining infertility as the inability to reproduce coitally, meaning that the service member or veteran must show an inability to procreate with a partner of the opposite sex (the "Coital Requirement").

determine whether a plaintiff has established subject matter jurisdiction by a preponderance of the evidence. *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008).

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). "[A] complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted). When considering a Rule 12(b)(6) motion to dismiss, the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the light most favorable to the plaintiff. *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013) (citation omitted). The Court is not required, however, "to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

## II. The Court Lacks Jurisdiction to Hear Plaintiff's Challenge to the VA's Policies

Courts begin with the presumption that agency action is reviewable. *Bowen v. Michigan Acad. of Fam. Physicians*, 476 U.S. 667, 670–73 (1986). That presumption can be overcome by "specific language" that evinces a congressional intent to deprive the courts of the power to hear challenges to agency action. *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 349 (1984). The VA argues that specific language in the Veterans Judicial Review Act ("VJRA") divests this Court of jurisdiction over Plaintiff's claims against the VA. *See* Def. Mem. at 14. Plaintiff argues that

the VJRA does not divest this court of jurisdiction because it is making a facial constitutional challenge to a statutory classification.[8]  Pl. Mem. at 9.

The VJRA states that the VA "shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits . . . to veterans," and that those decisions are "final and conclusive and may not be reviewed by any other official or by any court," except as otherwise provided.  38 U.S.C. § 511(a).  A veteran may appeal an adverse determination to the Board of Veterans' Appeals, 38 U.S.C. § 7105, and then to the Court of Veterans Appeals, an Article I court.  38 U.S.C. § 7252.  Finally, decisions of the Court of Veterans Appeals may be appealed to the Federal Circuit.  38 U.S.C. § 7292(c) ("The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction to review and decide any challenge to the validity of any statute or regulation or any interpretation thereof brought under this section . . . to the extent presented and necessary to a decision.").  The VJRA, thus, "precludes federal courts from hearing claims — even if draped in constitutional terms — seeking a particular type or level of medical care."  *Larrabee by Jones v. Derwinski*, 968 F.2d 1497, 1500 (2d Cir. 1992).

That said, facial challenges to the constitutionality of a statute, even if they may affect veterans' benefits, are not limited to the VJRA process.  *See Disabled Am. Veterans v. U.S. Dep't of Veterans Affs.*, 962 F.2d 136, 140 (2d Cir. 1992).  "Article III district courts have power to rule on the constitutionality of acts of Congress" and any contention to the contrary "implicates issues of constitutional separation of powers."  *Id.*  Where "[v]eterans neither make a claim for benefits nor challenge the denial of such a claim, but rather challenge the constitutionality of a

---

[8]       As Defendants note, that is not entirely accurate.  Def. Reply, Dkt. 71 at 3.  While Plaintiff does have a claim that has not been stayed that the Service Connection Requirement is unconstitutional (for the same reasons it argues DoD's Service Connection Requirement is unconstitutional), it also asserts that it violates the APA and the ACA.

statutory classification drawn by Congress, the district court [has] jurisdiction to consider their claim." *Id.* at 141.

Here, the Court lacks jurisdiction over Plaintiff's claims against the VA because Plaintiff is essentially challenging the denial of benefits on behalf of its members. On behalf of its members who are veterans, Plaintiff seeks to force the VA to provide coverage for IVF treatment. It argues that the Service Connection Requirement makes it incredibly challenging, if not "impossible," Pl. Mem. at 1, for most veterans to satisfy the requirements for coverage. It further argues that these impossibly difficult requirements and ultimate denials of benefits are unconstitutional and violate the ACA.

In an analogous case, veterans who served on ships off the shore of Vietnam challenged a VA policy that required them to prove, on a case-by-case basis, that they were exposed to Agent Orange during their military service in order to receive healthcare coverage for certain diseases linked to that herbicide. *See Blue Water Navy Vietnam Veterans Ass'n, Inc. v. McDonald*, 830 F.3d 570, 572–73 (D.C. Cir. 2016).[9] The D.C. Circuit explained that the court lacked subject matter jurisdiction because the plaintiffs were "undoubtedly challeng[ing] a decision affecting the provision of veterans' benefits." *Id.* at 574 (citation and internal quotation marks omitted) (explaining the claims fell under the VJRA because plaintiffs sought "review of the validity of a VA policy that leads directly to the denial of certain benefits for most, if not all, of the veterans it affects").

---

[9]     Plaintiff cites a 2006 case from the D.C. Circuit that held: "Section 511(a) does not give the VA *exclusive* jurisdiction to construe laws affecting the provision of veterans' benefits or to consider all issues that might somehow touch upon whether someone receives veterans' benefits. Rather, it simply gives the VA authority to consider such questions when making a decision about benefits." *Broudy v. Mather*, 460 F.3d 106, 112 (D.C. Cir. 2006). In *Blue Water*, the same Court cabined *Broudy*'s holding and made clear that the VJRA applies both to individual determinations and "VA policies of general applicability, such as regulations or interpretations." 830 F.3d at 575.

The fact that Plaintiff alleges constitutional violations stemming from the denial of benefits does not change the analysis. *See Larrabee*, 968 F.2d at 1500 ("One may not circumvent [the VJRA] by seeking damages on a constitutional claim arising out of a denial of benefits." (citation omitted)). Because NOW "seek[s] a particular type . . . of medical care," *id.*, its claims against the VA are exactly the sorts of claims that Congress intended to keep out of the hands of this Court and, instead, in the VJRA process. As such, this Court lacks subject matter jurisdiction to hear Plaintiff's claims against the VA.

The VA's motion to dismiss is granted, and Plaintiff's claims against the VA are dismissed without prejudice.[10]

## III.    Plaintiff Has Standing to Challenge DoD's Policies

To have standing, Plaintiff must show that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). As a membership organization, Plaintiff can establish standing in two ways. First, it may sue on "its own behalf." *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 649 (2d Cir. 1998). Second, it may "assert the rights of its members under the doctrine of associational standing." *Id.* (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343–45 (1977)). Plaintiff chose the latter, arguing that it has associational standing on behalf of its members. An organization has associational standing if its members would have standing to sue in their own right, the interests the organization seeks to protect are germane to the purpose of the organization, and neither the claim made nor the relief sought requires the participation of individual members. *Id.*

---

[10]    To the extent Plaintiff's constitutional and statutory claims about the Service Connection Requirement are not seen as, in essence, a challenge to the denial of benefits, they would be dismissed on the merits for the same reasons as the constitutional and statutory claims related to DoD's Service Connection Requirement are dismissed.

Plaintiff alleges that its members are harmed by DoD's Service Connection Requirement, *see* Am. Compl. ¶¶ 66–68, but it does not provide the names of those members in the Complaint. Instead, it describes them. *Id.* DoD argues that Plaintiff is required to "name names" and that Plaintiff's failure to provide the names of its members who have allegedly been harmed means that it has not adequately alleged its standing. Def. Mem. at 12–13 (citing *Do No Harm v. Pfizer Inc.*, 96 F.4th 106, 115 (2d Cir. 2024) ("[A]n association cannot just *describe* the characteristics of specific members with cognizable injuries; it must identify at least one by name.")). The *Do No Harm* panel explicitly stated, however, that the requirement to name names applies at summary judgment; the Court expressly did not in that case "decide whether, at the *pleading* stage, [plaintiff] was required to name names." *Id.* Other Circuit Court precedent makes clear that Plaintiff may allege associational standing without naming the injured members in the Complaint. *See Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015), *overruled on other grounds by Arizona All. for Retired Americans v. Mayes*, No. 22-16490, 2024 WL 4246721, at *8 (9th Cir. Sept. 20, 2024) (noting "that an injured member of an organization" need not "always be specifically identified in order to establish Article III standing for the organization"); *Hancock Cnty. Bd. of Sup'rs v. Ruhr*, 487 F. App'x 189, 198 (5th Cir. 2012) (unpublished) ("We are aware of no precedent holding that an association must set forth the name of a particular member in its complaint in order to survive a Rule 12(b)(1) motion to dismiss based on a lack of associational standing."); *see also Bldg. & Const. Trades Council of Buffalo & Vicinity v. Downtown Dev., Inc.*, 448 F.3d 138, 145 (2d Cir. 2006) (there is no requirement that an association "name names" in its complaint "in order properly to allege injury in fact to its members").

Although an organization need not include the names of its injured members at the pleading stage, it must make specific allegations establishing that at least one identified member

has standing.  *See Summers v. Earth Island Institute,* 555 U.S. 488, 498 (2009) ("[O]ur prior

cases . . . have required plaintiff-organizations to make specific allegations establishing that at

least one identified member had suffered or would suffer harm.").  An organization cannot rely

on statistical probabilities to assume that a member has standing.  *See id.* at 497–99 (holding that

the Sierra Club cannot assume that at least one of its 700,000 members uses and enjoys the

Sequoia National Forest, even if that is almost certainly true).  Following the Supreme Court's

decision in *Summers*, the Second Circuit has cautioned plaintiff-organizations to be "specific —

even if 'naming names' and submitting individual affidavits is not required."  *Faculty, Alumni,*

*and Students Opposed to Racial Preferences v. New York Univ.*, 11 F.4th 68, 76 (2d Cir. 2021);

*see also Nat. Res. Def. Council, Inc. v. Wheeler*, 367 F. Supp. 3d 219, 227 (S.D.N.Y. 2019)

("While the organization need not identify any member with standing in his or her own right by

name, it must nevertheless establish that at least one identified member has suffered or would

suffer harm." (cleaned up)).  *But see Pen Am. Ctr., Inc. v. Trump*, 448 F. Supp. 3d 309, 321 n.1

(S.D.N.Y. 2020) (noting in a footnote that naming names is required).

NOW has standing to challenge DoD's Service Connection Requirement because the

Amended Complaint adequately describes specific members who have been harmed by the

policy, even though it does not provide their names.  First, it describes a NOW member who (a)

is currently an active-duty military service member, (b) underwent several rounds of IUI with her

wife, (c) sold her house to pay for ART services, (d) has not had success with previously

attempted treatments, and (e) cannot establish that a Category II or III illness or injury caused her

need for IVF to procreate.  Am. Compl. ¶ 66.  Next, it describes two members — an active-duty

Air Force officer and his wife, a civilian TRICARE beneficiary — who (a) underwent four failed

rounds of IUI and two failed rounds of embryo transfers through IVF while stationed in Ohio, (b)

have been diagnosed with "unexplained infertility" and cannot satisfy the Service Connection

Requirement, (c) moved to Arizona on military orders and paid out of pocket to transfer their remaining frozen embryos from Ohio to Arizona, and (d) finally had a successful embryo transfer.  *Id.* ¶¶ 67–68.  The information alleged in the Amended Complaint about these unnamed NOW members is incredibly specific.  These allegations are sufficient to "identify" the members, even without including their names.  The Court is satisfied that NOW has organizational standing and has not relied improperly on mere statistical probabilities.

## IV.    Plaintiff Fails to State a Claim Against the DoD

On the merits, DoD moves to dismiss all claims for failure to state a claim.  There are four unstayed claims challenging the Service Connection Requirement: (1) Violation of Substantive Due Process Under the Fifth Amendment, (2) Violation of Equal Protection Under the Fifth Amendment, (3) Sex Discrimination in Violation of the ACA, and (4) Violation of the APA.

### A.  Substantive Due Process Under the Fifth Amendment

Plaintiff alleges that DoD's Service Connection Requirement violates its members' substantive due process rights enshrined in the Fifth Amendment to the U.S. Constitution.  In its view, there is a fundamental right to procreate, *see Skinner v. Oklahoma*, 316 U.S. 535, 541 (1942) (calling procreation a "basic civil right[] of man" and striking down a law that sterilized criminals convicted of certain crimes), and the Service Connection Requirement infringes on that right.  Further, it argues that because the requirement infringes on a fundamental right, the Service Connection Requirement is subject to strict scrutiny.

To state the obvious, not covering the cost of IVF is not comparable to forcible sterilization.  "Although the liberty protected by the Due Process Clause affords protection against unwarranted government interference with freedom of choice in the context of certain personal decisions" — including the decision to conceive children — "it does not confer an

entitlement to such funds as may be necessary to realize all the advantages of that freedom."

*Harris v. McRae*, 448 U.S. 297, 317–18 (1980).  Because Plaintiff claims DoD wrongfully

declines to pay for the cost of procreation by way of IVF, not that it takes actions that

"jeopardize[] [the] exercise of a fundamental right," the Service Connection Requirement need

only "further a legitimate state interest."  *Nordlinger v. Hahn*, 505 U.S. 1, 10–11 (1992) ("there

[need only be] a plausible policy reason for" the requirement).  A government policy survives

rational basis review "if there is any reasonably conceivable state of facts that could provide a

rational basis for the classification."  *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993).

The Government has provided a rational justification for the Service Connection

Requirement.  It explains that, in determining how to spend a limited pool of money, Congress

has given priority for extended benefits, like IVF, to service members who need the services

because of injuries or illnesses related to their service.  Def. Mem. at 18.  "Awarding this type of

benefit[] inevitably involves the kind of line-drawing that will leave some . . . outside the favored

circle;" Congress must "have discretion in deciding how to [allocate] necessarily limited

resources" among potential beneficiaries.  *Schweiker v. Wilson*, 450 U.S. 221, 238 (1981).

Drawing the line here, to limit a costly procedure to those who need it because of their military

service, is rational.  The rational basis for the policy is underscored by the fact that DoD has an

interest in prioritizing medical services that ensure service members remain or become

physically fit for service.  IVF, while necessary for some couples to become parents, does not

treat an illness that would make an unfit service member fit for service.

Plaintiff attempts to show the policy's irrationality by comparing DoD's policy to the

IVF coverage available under the Federal Employee Health Benefit ("FEHB") plan.[11]  Am.

---

[11]    FEHB provides health coverage, including for IVF, to civilian federal employees.

Compl. ¶ 56.  Defendants counter that the FEHB is a very different benefit system.  Def. Mem. at

20–21.  FEHB benefits are provided through private insurance companies based on extensive

negotiations between those companies and the Office of Personnel and Management.  *Id.*

TRICARE, in contrast, is a federally-administered health care program, and services may be

delivered directly at military facilities.  *Id.* at 21.  Additionally, TRICARE is heavily subsidized;

federal employees pay a more significant portion of their healthcare premiums than TRICARE

insureds.  *Id.*  All of these differences provide rational justifications for why coverage under

TRICARE differs from coverage under FEHB.

### B.  Equal Protection Under the Fifth Amendment

Plaintiff next argues that the Service Connection Requirement violates the Equal

Protection Clause of the Fifth Amendment because it classifies coverage on the basis of sex.

Am. Compl. ¶¶ 96–97.  Plaintiff maintains that IVF is a medical service provided only to people

with uteruses, so restrictions on IVF are inherently classifications based on sex.  Pl. Mem. at 14.

It argues that "only women undergo surgical implantation procedures; therefore, only women

and not men stand in potential danger' of facing discrimination for pursuing IVF."  *See* Pl. Mem.

at 15 (quoting *Govori v. Goat Fifty, L.L.C.*, No. 10-CV-8982 (DLC), 2011 WL 1197942, at *3

(S.D.N.Y. March 30, 2011)).  Further, Plaintiff argues that the military has a long history of

animus towards and discrimination against women.[12]  *Id.* at 12–14.  In Plaintiff's view, because

the Requirement is a sex-based classification, it is subject to intermediate scrutiny, which places

---

[12]     Animus or discriminatory purpose is a required element of a disparate impact claim under the Fifth
Amendment.  *See Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 & n.24 (1979).  The Amended Complaint
contains allegations relating to a disparate impact theory, *see* ¶ 90, but Plaintiff's memorandum in opposition to the
Motion to Dismiss barely touches on disparate impact.  It is unclear whether Plaintiff is advancing that theory in
support of its equal protection claim.  Either way, the Amended Complaint contains insufficient allegations to show
a "substantial disparate impact" on a protected class beyond mere speculation.  *Califano v. Boles*, 443 U.S. 282, 294
(1979).  The Amended Complaint acknowledges that "[i]nfertility affects service members and veterans of all
gender identities."  Am. Compl. ¶ 20.  The allegations do not demonstrate that Defendants' IVF policies disparately
affect one gender or the other.

the burden on the Government, not Plaintiff, to show "that the [challenged] classification serves important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objectives." *United States v. Virginia*, 518 U.S. 515, 524 (citation and internal quotation marks omitted).  To survive intermediate scrutiny, DoD's justifications must be "genuine, not hypothesized or invented *post hoc* in response to litigation." *Id*. at 533.

DoD's policies, however, are not sex based; the policies apply equally to male and female service members.  If the service member is male, he needs to have a Category II or III injury or illness that caused his infertility in order for TRICARE to cover IVF.  Similarly, if the service member is female, her inability to procreate naturally must be the result of a Category II or III injury or illness in order for TRICARE to cover IVF.  Even though IVF is a medical procedure that involves a woman at critical points in the process (through egg retrieval and uterine implantation), that does not mean that the Service Connection Requirement for healthcare coverage of IVF is sex-based.  The IVF benefits are gender-neutral and apply equally to male and female service members.  *Saks. v. Franklin Covey Co.*, 316 F.3d 337, 346–47 (2d Cir. 2003) (holding that an employer's denial of insurance coverage for, *inter alia*, IVF did not constitute unlawful sex discrimination because infertility affects both sexes).  *See also* 2024 DoD Memo at 2, § III.A ("The policy applies to all qualifying Service members, regardless of gender . . . who have sustained a serious or severe illness/injury while on active duty that led to the loss of their ability to procreate without the use of ART.").  This point is obvious from the Amended Complaint; Plaintiff alleges standing based on male and female service members failing to qualify for TRICARE coverage of IVF.  *See* Am. Compl. ¶ 67.

Because the classification is not sex-based and is instead a classification between service members with service-connected infertility and those without, the policy is subject only to rational basis review. As explained above, the policy is rational.

### C. Sex Discrimination in Violation of the Affordable Care Act

Section 1557 of the ACA prohibits discrimination and the denial of healthcare benefits on the basis of certain protected grounds, including sex. *See* 42 U.S.C. § 18116. Section 1557 "incorporates [the] Title IX sex discrimination" private right of action "and its accompanying pleading standards." *Weinreb v. Xerox Bus. Servs., LLC Health & Welfare Plan*, 323 F. Supp. 3d 501, 521 (S.D.N.Y. 2018). A plaintiff states a claim for sex discrimination under Section 1557 by plausibly alleging that he or she was (1) excluded from participation in, denied the benefits of, or subjected to discrimination in the provision of (2) federally funded healthcare services, and (3) that this treatment occurred on the basis of sex. *See* 20 U.S.C. § 1681(a).

Plaintiff argues that DoD facially discriminates "[b]y applying a unique, onerous requirement to gender-specific healthcare for those of child-bearing capacity." Pl. Mem. at 23. As discussed above, the Service Connection Requirement is gender-neutral and applies to both male and female service members. Because there is no discrimination "on the basis of sex," Plaintiff has not sufficiently alleged the elements of sex discrimination under Section 1557 of the ACA.

### D. Arbitrary and Capricious in Violation of the Administrative Procedure Act

For its final claim, Plaintiff argues that DoD's policy is contrary to law and arbitrary and capricious, in violation of the APA. Under the APA, a reviewing court must set aside an agency decision that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *New York v. FERC*, 783 F.3d 946, 958 (2d Cir. 2015). When an agency has discretion to make a policy determination, that determination must be reasoned and

19

rational.  *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016); *Motor Vehicle Mfrs.*

*Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (explaining that an agency must

"examine the relevant data and articulate a satisfactory explanation for its action"); *Nat. Res.*

*Def. Council, Inc. v. United States Env't Prot. Agency*, 961 F.3d 160, 170 (2d Cir. 2020) (agency

must give "adequate reasons for its decisions" (quoting *Encino Motorcars, LLC v. Navarro*, 579

U.S. 211, 221 (2016))).

Plaintiff first alleges that the service connection requirement violates the APA because it

is contrary to the U.S. Constitution and contrary to federal law.  Am. Compl. ¶¶ 140–44.  Those

claims rise and fall with the claims under the Fifth Amendment and Affordable Care Act.  For

the reasons discussed above, Plaintiff has failed to state a claim under the APA that DoD's

policy is contrary to the Constitution or federal law.

That leaves only whether the policy is arbitrary and capricious.  NOW alleges that the

statutory authority DoD invoked to offer the IVF benefits was not reasoned.  *See* Am. Compl. ¶¶

130–39.

There are three possible statutory bases pursuant to which DoD could provide coverage

for IVF:

1.  **Section 1074(c)(4)** provides that "coverage comparable to that provided [under sections 1079(d) and (e)] of this title shall be provided under this subsection to members of the uniformed services who incur a serious injury or illness on active duty." 10 U.S.C. § 1074(c)(4).  Sections 1079(d) and (e), in turn, provide for "extended benefits . . . to assist in the reduction of the disabling effects of a qualifying condition of an eligible dependent."  *Id.* § 1079(d)(1).

    o  Coverage under Section 1074(c) is explicitly limited to those who have incurred a "serious injury or illness on active duty," and Congress has delegated to the Secretary of Defense the responsibility to define "serious injury or illness" for purposes of that statute.  *Id.* §§ 1074(c)(4)(A), (B)(ii).

2.  **Section 1074d** authorizes coverage for female service members of primary and preventative health care services for women, including cervical cancer screening, gynecological and pregnancy care, and notably, infertility.  *Id.* §§ 1074d(a)(1), (b).

20

> o   This section does not include any requirement that the service member have a service-related injury or illness.

3. **Section 1074(a)** provides for "medical and dental care in any facility of any uniformed service." *Id.* § 1074(a)(1).

> o   This section does not include any requirement that the service member have a service-related injury or illness.

Given these options, NOW contends it was arbitrary and capricious for DoD to offer IVF benefits relying on its authority under 10 U.S.C. § 1074(c)(4), rather than relying on its authority under § 1074d or § 1074(a), because the alternative statutes do not limit coverage to service members with a serious injury or illness on active duty.  Pl. Mem. at 25–26.

DoD explains otherwise.  Def. Reply, Dkt. 71 at 13–15.  Section 1074d provides infertility coverage only to *female* service members; if DoD had relied on that authority to offer IVF benefits, it would have excluded all male service members who need IVF to procreate.  As for 1074(a), it limits coverage to healthcare within any facility of any uniformed service.  If DoD had proceeded under that authority, private-sector IVF benefits would not have been available; that would have severely limit service members' access to IVF.

Because of the statutory restrictions in sections 1074d and 1074(a), DoD decided to provide IVF coverage under 1074(c)(4).  That decision was consistent with its commitment, articulated at the time coverage was authorized, "to ensur[e] maximum support for our members who have become seriously injured as a result of their service."  2010 DoD Memo at 1.  *See also* 2024 DoD Memo at 1 (DoD "remains committed to ensuring the maximum support for our members who have become seriously ill or injured as a result of their service on Active Duty, resulting in injuries or conditions that lead to the inability of those members to procreate without the use of ART.").

DoD's decision to use Section 1074(c)(4) as the statutory basis for IVF coverage was not arbitrary or capricious. That section allows DoD to provide IVF coverage to both men and women service members through private facilities. Although it comes with the statutory requirement that the service member "incur[red] a serious injury or illness on active duty," 10 U.S.C. § 1074(c)(4), which DoD defined as a Category II or III illness, the Court cannot view that policy decision to be unreasonable, let alone arbitrary and capricious.[13]

## CONCLUSION

For the foregoing reasons, the motion to dismiss is GRANTED. The Service Connection Requirement claims against the VA are dismissed without prejudice for lack of subject matter jurisdiction. The Service Connection Requirement claims against DoD are dismissed with prejudice for failure to state a claim. NOW already had one opportunity to amend and further amendment would be futile. By not later than **Friday, November 29, 2024**, the parties must meet and confer and file a joint status update indicating whether Plaintiff intends to voluntarily dismiss the Stayed Claims or whether DoD intends to respond.

The Clerk of Court is respectfully requested to terminate the open motion at Dkt. 51.

**SO ORDERED.**

Date:  **October 31, 2024**
       **New York, New York**

**VALERIE CAPRONI**
**United States District Judge**

---

[13] The parties filed supplemental letter briefing addressing the Supreme Court's decision to overrule *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984). *See* Supp. Letters, Dkts. 75, 78 (addressing *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024)). The overruling of *Chevron* does not affect the motion to dismiss Plaintiff's APA claims. *Chevron* deference applied only when a statute was "silent or ambiguous with respect to the specific issue." *See Loper*, 144 S. Ct. at 2264 (citation omitted). Because the statutory scheme is neither silent nor ambiguous on the question at issue in this case, the Court has not deferred to any DoD construction of the statute. Instead, the Court evaluated whether DoD has given, as required by the APA, a reasoned, rational, and adequate justification for its decision.